EILEEN DEMARIA *v.* JOSEPH L. DEMARIA
(SC 15912)

Callahan, C. J., and Katz, Palmer, McDonald and Peters, Js.

Argued October 29, 1998—officially released February 16, 1999

*David P. Ball*, for the appellant (plaintiff).

*Raymond C. Lubus*, for the appellee (defendant).

*Opinion*

KATZ, J. The sole issue in this certified appeal is whether the trial court improperly denied a motion to terminate alimony based upon its factual finding that the financial impact component of General Statutes § 46b-86 (b)[1] had not been satisfied. The motion had

[1] General Statutes § 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend,

been based upon a clause in the dissolution judgment that provided for the termination of alimony upon the recipient's "cohabitation" with an unrelated male but did not expressly require consideration of the financial impact of such a living arrangement. We conclude that the trial court properly applied § 46b-86 (b) to determine whether the plaintiff, Eileen DeMaria, had been "cohabiting" with an unrelated male pursuant to the dissolution judgment.

The following undisputed facts were set forth by the Appellate Court. "When the marriage of the parties was terminated on June 4, 1992, the judgment of dissolution included a provision stating that 'the defendant [Joseph L. DeMaria] shall pay to the plaintiff the sum of $85 per week as and for alimony, which alimony shall terminate upon . . . the cohabitation by the plaintiff with an unrelated male . . . .'

"On January 29, 1997, the plaintiff filed a motion for contempt on the ground that the defendant had voluntarily and intentionally stopped paying alimony.[2] This was followed, on January 31, 1997, by the defendant's motion to terminate the alimony payments on the ground that the plaintiff had been cohabiting with a male since April, 1996.[3] Following an evidentiary hearing, the trial court found that the plaintiff was living

reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

[2] "The plaintiff filed a motion to modify child support, which was granted at the same time that the court acted on the other motions of the parties, and which is not involved in this appeal." *DeMaria* v. *DeMaria*, 47 Conn. App. 729, 730 n.1, 707 A.2d 741 (1998).

[3] "The defendant's motion to terminate alimony stated: 'The Defendant, Joseph DeMaria, represents as follows:

"'1. On June 4, 1992, this court (*Mihalakos, J.*) entered a judgment of dissolution of the marriage.

"'2. Pursuant to the terms of said decree, the Defendant was ordered to

with another person, but also found that there was no evidence that this fact [had] altered her financial needs. As a result, the trial court denied the defendant's motion to terminate alimony." *DeMaria* v. *DeMaria*, 47 Conn. App. 729, 730, 707 A.2d 741 (1998).[4]

Thereafter, the defendant appealed the judgment of the trial court to the Appellate Court. In his appeal to the Appellate Court, the defendant argued that, in his motion to terminate alimony, he had been seeking relief pursuant to the judgment of dissolution, which in his view did not require a finding that the plaintiff's cohabitation had altered her financial needs. The defendant claimed, therefore, that the trial court should have terminated the alimony based solely upon its finding that the plaintiff had been living with an unrelated male.

In response, the plaintiff argued that § 46b-86 (b) expressly provides that to terminate alimony, the cohabitation must "cause such a change of circumstances as to alter the financial needs of [the cohabiting] party." Therefore, according to the plaintiff, because the trial court found that her financial needs had not been altered, it properly denied the defendant's motion to terminate alimony.

---

pay to the Plaintiff as and for alimony the sum of $85.00 per week.

" '3. Pursuant to the terms of said decree, the obligation of the Defendant to pay to the Plaintiff alimony would terminate upon the occurrence of [the] Plaintiff's death, remarriage, or cohabitation with an unrelated male.

" '4. The Plaintiff has been cohabiting with an unrelated male commencing on or about April, 1996, specifically, Mr. John Foristall, at 2 Farnam Hill Road, Bethel, Connecticut.

" 'WHEREFORE The [Defendant] respectfully moves for:

" '(A) termination of alimony based on the judgment in the file or;

" '(B) in the alternative, termination of alimony based on [the] Plaintiff's cohabitation pursuant to Connecticut General Statutes § 46b-86; and

" '(C) Reimbursement of alimony payments paid to [the] Plaintiff from April, 1996, until August 31, 1996.' " *DeMaria* v. *DeMaria*, 47 Conn. App. 729, 730 n.2, 707 A.2d 741 (1998).

[4] "The trial court also acted on the plaintiff's motion for contempt and determined an arrearage amount, but expressly declined to make a finding of contempt." *DeMaria* v. *DeMaria*, supra, 47 Conn. App. 730 n.3.

The Appellate Court agreed with the defendant, concluding that because he had sought relief from alimony pursuant to a clause in the judgment that did not expressly include consideration of the financial impact, the trial court, having found that the plaintiff had been living with an unrelated male, should have terminated the defendant's alimony obligation. *DeMaria* v. *DeMaria,* supra, 47 Conn. App. 730. The plaintiff petitioned this court for certification to appeal from the judgment of the Appellate Court, which we granted, limited to the following issue: "Under the circumstances of this case, did the Appellate Court properly render a judgment terminating alimony to a cohabiting spouse where there was no showing that the cohabiting spouse's financial needs had changed?"[5] *DeMaria* v. *DeMaria,* 244 Conn. 925, 714 A.2d 9 (1998).

The Appellate Court essentially treated the word "cohabit" as synonymous with "living together," and concluded that in view of its finding that the plaintiff was living with an unrelated male, the trial court should have terminated her alimony. *DeMaria* v. *DeMaria,* supra, 47 Conn. App. 734. We conclude, in accordance with the definition contained in § 46b-86 (b), that the

[5] Following oral argument, we sought the following articulation from the trial court:

"1. What did the parties intend by the use of the term 'cohabitation' in the separation agreement that was incorporated into the judgment of dissolution dated June 4, 1992?

"2. In rendering the judgment denying the defendant's post-judgment motion to terminate alimony, did the trial court apply General Statutes § 46b-86 (b) or the common law to determine that the plaintiff was not 'cohabiting with a nonrelated male' as required by the dissolution judgment for the termination of alimony?"

The trial court responded as follows to the first question: "Answer: There was no separation agreement"; and to the second question: "Answer: In rendering the judgment denying the defendant's post-judgment motion to terminate alimony, I applied General Statutes § 46b-86 (b) to determine that the plaintiff was not '[cohabiting] with a nonrelated male' as required by the dissolution judgment for the termination of alimony."

trial court properly construed the term "cohabitation" as used in the dissolution judgment to include the financial impact of the living arrangement on the cohabiting spouse, and accordingly, we reverse the judgment of the Appellate Court.

The term cohabit was not defined in the dissolution judgment. Therefore, in deciding the defendant's motion to terminate alimony, the trial court was left to construe the word. Black's Law Dictionary (6th Ed. 1990) defines cohabitation as "[t]o live together as man and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations. . . ." See *Boyd* v. *Boyd*, 228 Cal. App. 2d 374, 381, 39 Cal. Rptr. 400 (1964). This court has defined cohabitation to be "a dwelling together of man and woman in the same place in the manner of husband and wife." *Wolk* v. *Wolk*, 191 Conn. 328, 332, 464 A.2d 780 (1983). As is readily apparent, the word is not inflexible nor is it one of strict or narrow meaning.

Section 46b-86 (b) does not use the word cohabitation. The legislature instead "chose the broader language of 'living with another person' rather than 'cohabitation' . . . ." *Kaplan* v. *Kaplan*, 185 Conn. 42, 45, 440 A.2d 252 (1981), on appeal after remand, 186 Conn. 387, 441 A.2d 629 (1982). Because, however, "living with another" person without financial benefit did not establish sufficient reason to refashion an award of alimony under General Statutes § 46b-81, the legislature imposed the additional requirement that the party making alimony payments prove that the living arrangement has resulted in a change in circumstances that alters the financial needs of the alimony recipient. Therefore, this additional requirement, in effect, serves as a limitation. Pursuant to § 46b-86 (b), the nonmarital union must be one with attendant financial consequences before the trial court may alter an award of alimony.

Although the definition of cohabitation as set forth in the dissolution judgment is not controlled by § 46b-86 (b), statutes are a useful source of policy for common-law adjudication, particularly when there is a close relationship between the statutory and common-law subject matters. *Fahy* v. *Fahy*, 227 Conn. 505, 514–15, 630 A.2d 1328 (1993) (use of Public Acts 1990, No. 90-213, § 46, which amended General Statutes [Rev. to 1989] § 46b-86 [a], to conclude, as matter of common law, that elimination of contemplation requirement applies to alimony as well as child support orders); see *New England Savings Bank* v. *Lopez*, 227 Conn. 270, 281–82, 630 A.2d 1010 (1993) (Uniform Commercial Code used as statutory source for transactions involving real property); *Olean* v. *Treglia*, 190 Conn. 756, 762, 463 A.2d 242 (1983) (same); *Conference Center Ltd.* v. *TRC*, 189 Conn. 212, 225, 455 A.2d 857 (1983) (same); *Hamm* v. *Taylor*, 180 Conn. 491, 494–95, 429 A.2d 946 (1980) (same); see also *Canton Motorcar Works, Inc.* v. *DiMartino*, 6 Conn. App. 447, 453–54, 505 A.2d 1255, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986) (statute governing rights of successor corporation following merger used as precedent for determining rights of partnership as successor entity following merger). "Statutes are now central to the law in the courts, and judicial lawmaking must take statutes into account virtually all of the time. . . . More often, the issue is rather to what extent a statute is itself a source of policy for consistent common law development." E. Peters, "Common Law Judging in a Statutory World: An Address," 43 U. Pitt. L. Rev. 995, 998 (1982); see generally J. Landis, "Statutes and the Sources of Law," Harvard Legal Essays (R. Pound ed. 1934) p. 213; G. Calabresi, A Common Law for the Age of Statutes (1982).

We consider this case to be a similarly appropriate instance to look to our statutes as a useful source of common-law policy and, therefore, consider the trial

court's reliance upon § 46b-86 (b) as a definitional source to have been a proper exercise of its authority. Section 46b-86 (b) was an express grant of authority to modify or terminate alimony "upon [a] showing that the receiving party is living with another person and that such living arrangements result in a change of circumstances that alter the financial needs of such party." 20 S. Proc., Pt. 7, 1977 Sess., p. 2793, remarks of Senator Salvatore DePiano. In the absence of a compelling reason to ignore the legislative consideration of financial impact and thus truncate the analysis after simply having found a change in living arrangements, we conclude that as a matter of common-law adjudication, the trial court was guided properly by the statute.

We recognize the statement by this court that a motion to terminate alimony based upon § 46b-86 (b) is a separate and independent statutory basis for modification and is a claim that must be raised, if at all, in a written motion. *Connolly* v. *Connolly*, 191 Conn. 468, 478, 464 A.2d 837 (1983). That statement, however, merely recognizes the limitations of § 46b-86 on a court's authority to modify a prior distribution of property and determination of alimony made pursuant to § 46b-81. In recognition of the sensitive nature of the allegations needed to satisfy § 46b-86 (b), and because such considerations are reflected in its notice and hearing requirements, the court in *Connolly* concluded that an attempt by one party to increase periodic alimony pursuant to § 46b-86 (a) does not extend constructive notice to subsection (b) of the statute. Id. Nothing in *Connolly*, or in any other case that we have examined, precludes an interpretation of cohabitation that is consistent with the considerations expressed by the legislature in § 46b-86 (b). Indeed, we have found no principled reason to reject such an interpretation of cohabitation.

The judgment of the Appellate Court is reversed and the case is remanded with direction to affirm the judgment of the trial court denying the defendant's motion to terminate alimony.

In this opinion CALLAHAN, C. J., and PALMER and PETERS, Js., concurred.

MCDONALD, J., dissenting. I dissent from the majority opinion.

The defendant was ordered, pursuant to a dissolution judgment, to pay periodic alimony to the plaintiff until either party dies, the plaintiff remarries, "the cohabitation by the plaintiff with an unrelated male," or until June 4, 2004. Because the plaintiff was cohabiting with an unrelated male, the defendant moved to terminate that alimony under the terms of the dissolution judgment or, in the alternative, under General Statutes § 46b-86 (b).

The Appellate Court held that a finding of a change in financial circumstances was not required to terminate the alimony under the terms of the initial dissolution judgment. The majority now engrafts onto the terms of that judgment the need to show a financial change. The majority takes the financial change requirement from § 46b-86 (b). Furthermore, the majority interprets the term cohabitation in the dissolution judgment as "living with another person" because that phrase is used in § 46b-86 (b). The majority thereby applies § 46b-86 (b) to both grounds.

Yet, cohabitation has a narrower meaning than "living with another person." It means the "dwelling together of man and woman in the same place in the manner of husband and wife." *Wolk* v. *Wolk*, 191 Conn. 328, 332, 464 A.2d 780 (1983). "Living with another person" may include cohabitation, but also may include living with a relative or another in a platonic manner. It simply

is not true, as the majority suggests, that "living with another person" and "cohabitation" have the same meaning. The dissolution judgment obviously never contemplated living in a convalescent home or in a coed dormitory as grounds for terminating alimony when it used the words "cohabitation . . . with an unrelated male."

The definition of cohabitation found in the decisions of this court and in Black's Dictionary, cited by the majority, was sufficient in and of itself to render a judgment pursuant to the terms of the dissolution judgment. Cohabitation with an unrelated male was a specific circumstance foreseen in the dissolution judgment as grounds for terminating alimony. "The authority of the court to refashion the [award] of alimony . . . is limited by the concept that the initial decree equitably distributed the joint estate of the parties . . . ." *Connolly* v. *Connolly*, 191 Conn. 468, 477, 464 A.2d 837 (1983). By modifying the dissolution judgment and adding the financial change requirement of § 46b-86 (b), the majority ignores this principle. The majority also fails to recognize "that . . . § 46b-86 (b) is a separate and independent statutory basis for the modification of alimony . . . ." Id., 478. The modification properly may be based solely on the terms of the dissolution judgment, independent of the provisions of § 46b-86 (b).

For these reasons, as well as those put forward by the Appellate Court in its well reasoned opinion, I respectfully dissent.