[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 12394
In defining cohabitation, our Supreme Court in the recent case of DeMaria vs. DeMaria, 247 Conn. 715 (1999), engrafted into our common law the provisions of Conn. Gen. Stat. Sec. 46b-86(b); i.e., the two pronged test of living together with another person and the financial impact of the living arrangement. The court has not ruled on the issue of whether the parties to a separation agreement themselves can define cohabitation in a termination of alimony paragraph different from the statutory definition. Although it was raised, this case does not resolve that issue because of factual findings.
After a 29 year marriage, the parties were divorced on February 20, 1990 (Petroni, J.). A separation agreement entered into by the parties was approved by the court and incorporated into the decree. The agreement, inter alia, provided that alimony would be paid until the Wife's remarriage. It went on to say:
 4.1 For the purpose of this Agreement, the Wife shall be deemed to have "remarried" and the Husband relieved from the obligation to make further alimony payments to her if she has:
(a) . . .
(b) . . .
 (c) The Superior Court, upon application of the Husband shall determine that the Wife has entered into and maintained a relationship including cohabitation with a man under such circumstances and conditions, and over a period of at least six (6) months, so that the Superior Court concludes that the Wife and said man are "living together" . . .; or
 (d) Alimony payments pursuant to paragraph 3.1 have been terminated upon the application of the Husband pursuant to Connecticut General Statutes Section 46b-86(b)."
In September 1996, the Wife met one William R. Langston and has had a relationship with him since that time. For a period of nine (9) months prior to February 1998, Langston testified to spending 5 to 6 nights per week at the Wife's residence. He kept CT Page 12395 some clothing items there, took some meals at the residence, parked his car in the driveway, and used the telephone. He and the Wife took two (2) vacations together and went out to dinner frequently. Costs of the vacations, dinners, and meals at the residence were essentially shared. He also loaned her $10,000 to assist in the purchase of a new residence which she repaid upon the sale of her old residence.
It is significant to note that Langston always maintained and occupied his own residence and continues to do so. He testified that he spent much time at the Wife's residence for two (2) reasons: she was ill with cancer and he wanted to be supportive, and she was preparing to move to a smaller residence and needed assistance. He now spends less than half of his time at the new residence.
One February 2, 1999, Langston was deposed by the Husband's attorney. When the subpoena arrived for the deposition, it first struck him that his relationship was having an adverse impact on the Wife's life and he did not want that to happen. There was no reason for him to be at the residence as much as he had been and so he ceased coming as frequently as he had been. He told the Wife of his decision after the fact. No other witness testified at the hearing except Langston.
The Supreme Court has defined cohabitation to be "a dwelling together of man and woman in the same place in the manner of husband and wife." Wolk v. Wolk, 191 Conn. 328, 332, (1983). TheDeMaria case, supra, modified this definition by adding the requirements of § 46b-86b; i.e., the two pronged test mentioned earlier. In the instant case, neither the Wolk nor theDeMaria tests were satisfied. Friendship does not equate to cohabitation.
This court does not have to reach the issue of whether the parties can contract for their own definition of cohabitation because the facts do not indicate that the parties were living together. This factual finding terminates the need for any further inquiry.
Accordingly, the motion to modify is denied.
CUTSUMPAS, J. CT Page 12396