[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On February 1, 1996, Dranginis J., dissolved the marriages of the parties and incorporated by reference in that judgment their Agreement of December 27, 1995. Under Paragraph 11 of that document, the parties retained joint ownership of the marital home in New Milford, Connecticut, and the plaintiff wife was to have exclusive possession until her death, remarriage, "her cohabitation with an unrelated male or the youngest minor child graduating from high school, whichever first occurs, at which time the property shall be listed for sale."
On December 22, 1999, the defendant husband filed a Motion to Compel (#112) and asked this court to compel the plaintiff to list the marital CT Page 9952 property for sale since she "has cohabitated with an unrelated male . . . ." A hearing on that motion was held on August 7, 2000, at which time both parties, a private investigator hired by the defendant, and the plaintiff's fiancee, Klaus Hortachek, testified.
The evidence established the following:
 1) The plaintiff and Mr. Hortachek are lovers and are engaged to marry though no wedding date has yet been set.
 2) For at least the past six (6) months and for perhaps as long as two (2) years, Hortachek has generally stayed overnight at the marital home on Wednesday evening and on weekends and "occasionally" on other nights as well.
 3) He maintains a permanent residence in Long Island where he resides with his adult son on the second floor of a residence in which his ex-wife resides on the first floor.
 4) He works sixty (60) hours per week for a company located in Rochester, New York, and is often required to be away on company business — sometimes, for weeks at a time.
 5) He drives a company truck which is registered in New York and he holds a New York license.
 6) He and the plaintiff together own a 1993 Jeep for which they each paid one-half the cost and which is registered at the plaintiff's Connecticut address.
 7) He receives his paychecks in New York, keeps most clothing there, files a tax return showing his New York address, and has his laundry done at the company's corporate offices in New York.
 8) He receives mail in New York though he has received mail as well at the plaintiff's address.
9) A change of address form provided the post office in New Milford indicates some mail is delivered to him in New Milford. CT Page 9953
 10) He has painted the interior of the marital property and has re-modeled a bathroom therein and has worked on the front walkway of that property.
 11) Although unemployed six (6) of the last twelve (12) months, the plaintiff wife is presently employed, receives child support for the two (2) minor children from the defendant husband, and also receives financial assistance both from her parents and from Hortachek, who gives her two hundred dollars ($200.00) "now and then."
 12) In the last year, Hortachek and the plaintiff have vacationed at Cape Cod twice for one (1) week each time, in North Carolina for a long weekend, Las Vegas for four (4) days, and Miami for three or four (3-4) days. With the exception of the Las Vegas trip which cost neither of them any money, Hortachek has paid for these vacations though the plaintiff has also paid for "token" meals.
 13) The plaintiff's children have not been with their mother when she and Hortachek have gone away.
14) Each has given the other gifts of jewelry.
 15) In April of 1999, Hortachek and the plaintiff made application to re-finance the marital property[1]
and he and the plaintiff hope to buy out the defendant husband's interest in the property.
 16) Hortachek and the plaintiff share no bank accounts or financial investments and neither is a named beneficiary under any insurance policy carried by the other.
 17) The defendant's private investigator conducted surveillance of the marital property on nine (9) occasions in August and September of 2000. On five (5) occasions, Hortachek's vehicle was not observed; on four (4) occasions, Hortachek's vehicle was parked in the plaintiff's driveway and he was seen driving away in it.
18) The defendant husband goes to the marital property every Wednesday evening and every other weekend to CT Page 9954 pick up and return the minor children from their visits with him. "More often than not" — or approximately sixty percent (60%) of the time — he observed the presence of Hortachek at the marital home.
The defendant has emphasized he proceeds solely under Paragraph 11 of the Agreement and not under C.G.S. § 46b-86 (b), this state's cohabitation statute which, with regard to the question whether alimony should be modified or terminated,[2] employs a two-pronged test: a) whether the spouse is "living with" another person, and b) under such changed circumstances as to have altered the financial needs of that spouse. However, in defining "cohabitation," our Supreme Court has recently engrafted onto our common law the provisions of that statute and thus the two-pronged test survives decisional law's definition of that term. See DeMaria v. DeMaria, 247 Conn. 715 (1999). "Cohabitation" is a dwelling together of man and woman in the same place in the manner of husband and wife. Wolk v. Wolk, 191 Conn. 328, 332 (1983), citing 2 Am.Jur.2d., Adultery and Fornication. § 1. Whether an individual is living with another person is a fact specific determinative. SeeD'Ascanio v. D'Ascanio, 237 Conn. 481, 486 (1996); Lupien v. Lupien,192 Conn. 443 (1984); Kaplan v. Kaplan, 186 Conn. 387 (1982); Duhl v.Duhl, 7 Conn. App. 92 (1986). Significant to this determination is that Hortachek maintains a permanent residence in another state and maintains a presence there separate from that of the plaintiff. The evidence did not establish either party thought of the martial property as Hortachek's home or that the plaintiff's children were an integral part of his life as they surely would be had he been living in the plaintiff's home in the manner of a husband. The sharing of friendship or of a sexual relationship does not constitute cohabitation. The fact specific determination in this case is that Hortachek and the plaintiff do not live together in the same home as would a husband and wife. The defendant's testimony Hortachek is at the marital property "more often than not" when the defendant is there is not inconsistent with this finding since the defendant is only there for visitation on Wednesday evening and every other weekend. Nor is the testimony of Hortachek that he is in New Milford Wednesday evening and weekends "when he can" inconsistent with that finding. Though the defendant urges the conclusion Hortachek is in New Milford whenever his employment permits, this court cannot so speculate particularly in the face of the evidence he works sixty (60) hours a week and the commute to New Milford from his job in New York consumes two to four (2-4) hours. While there is an ongoing relationship between the plaintiff and Hortachek, there is no communal life.
The defendant's reliance on Milhalyak v. Milhalyak, 30 Conn. App. 516
CT Page 9955 (1993) is misplaced not merely because the decision pre-dates DeMaria,
supra, in which the Court engrafted the two-pronged statutory test on the common law meaning of "cohabitation" but also because the Court inMilhalyak was clearly influenced by the fact the non-moving spouse orally stipulated at the evidentiary hearing that she did not want to receive any more alimony from the date the defendant stopped paying alimony directly to her and began placing it into an interest bearing account. This court need not, however, confront the statutory definition because the facts here dictate a finding the plaintiff wife is not cohabitating.
The motion to compel is therefore denied.
Sheedy, J.