[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO TERMINATE HIS ALIMONY OBLIGATION
The pertinent facts in this matter are as follows: On June 11, 1995 the marriage of the parties was dissolved. At that time the parties stipulated and the court ordered that plaintiff pay defendant $1,200 per week as alimony. It was further agreed and ordered that "said alimony . ., shall terminate . . . by court order only for cohabitation with a member of the opposite sex." By way of motion filed with this court on November 3, 2000, plaintiff now requests that his alimony obligation be terminated, claiming in support thereof that "upon information and belief the defendant is cohabiting with a member of the opposite sex."
During the hearing on January 4, 2001 it developed that defendant began a romantic relationship with one Philip Boucher on March 10, 1998. On April 27, 2000 defendant moved from Avon to a condominium in Wallingford. On or about June 1, 2000 Boucher moved his possessions into defendant's CT Page 2651 residence where he remained until November 14, 2000 when he managed to locate and move into an apartment of his own in Middletown. While the parties were together they shared the same bedroom "most of the time". They no longer have an interest in each other.
Plaintiff's claim is plain and uncomplicated: defendant has forfeited her claim to alimony by cohabiting with her male friend for a period of four months.
Defendant's position is more complex, she claiming that economic issues and their resolution by her and her friend Boucher take this matter within the purview of DeMaria v. DeMaria, 247 Conn. 715 (1999) and that on the evidence her alimony income should continue.
In DeMaria (supra) our Supreme Court in construing a similar claim on similar facts held that "the trial court properly construed the term `cohabitation' as used in the dissolution judgment to include the financial import on the living arrangements on the cohabiting spouse." It further added that "the non-marital union must be one with attendant financial consequences before the trial court may alter an award of alimony. DeMaria p. 720. In interpreting the meaning of cohabitation the trial court had relied upon Sec. 46b-86 C.G.S. Our Supreme Court found this reliance "to have been a proper exercise of its authority" and stated further that "in the absence of a compelling reason to ignore the legislative consideration of financial impact and thus truncate the analysis after simply having found a change in living arrangements . . . we conclude that the trial court was properly guided by the statute."DeMaria p. 722.
Returning to the matter before the court, the testimony of the defendant was that Boucher "performed work services for me during his stay — he paid me some money — we shared some expenses he paid me $300 per month which I used to pay my mortgage — we figured that money was for his share of the additional expenses it was a wash."
Boucher's testimony on this issue is summarized as follows:
"I assisted her (defendant) with the electrical work for her dishwasher, dryer and garage opener. I fixed a gate, watered the lawn, took care of her dog. The total value of all my work for her was at least $800-$900." On the more personal side he testified that "I slept with her unless we were having a fight. I had an exclusive romantic relationship with her when I moved into her apartment. Our relationship was contentious. We broke up twice a month." The relationship between the parties no longer exists.
In applying the law as set forth in DeMaria to the facts found inDoran, this court concludes that the financial contribution made by CT Page 2652 Boucher to the defendant during the almost six month period when he resided with her in her condominium was not sufficient to trigger an end to her alimony receipts. There were no beneficial financial consequences to defendant resulting from the arrangement. On the evidence the financial understanding between the parties appears to the court to be as described by the defendant — "it was a wash."
Plaintiff's motion to terminate alimony payments to defendant is accordingly denied.
John D. Brennan Judge Trial Referee