[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION de PLAINTIFF'S MOTION FOR CONTEMPT, POST JUDGMENT (134.10) and DEFENDANT'S MOTIONS TO REOPEN JUDGMENT (140), TO TERMINATE ALIMONY (141) and RETURN OF ALIMONY PAYMENTS (142)
The parties' marriage was dissolved by judgment entered on December 13, 1994 at which time their agreement was approved and incorporated by reference in the judgment. Paragraph 2.1 of said agreement provided for the defendant to pay to the plaintiff the sum of $775 weekly until the death of either party, the plaintiff's remarriage, the plaintiff's cohabitation as defined by statute or upon the expiration of five years CT Page 6251 after entry of the judgment. Paragraph 2.3 provided that said alimony shall be nonmodifiable as to term and amount.
The parties stipulated as follows:
A total of 260 weekly payment of $775 were due for a total amount of $201,500 payable from January 2, 1995 through December 27, 1999. Payments were made totaling $41,075 and that the unpaid amount of said order is $160,425. The last payment made was on December 31, 1997. The defendant filed a motion on July 23, 1997, dated July 14, 1997 (129), entitled Motion to Modify Alimony wherein he alleged that the plaintiff "is presently cohabiting" and that there has been a substantial change in the circumstances of the parties. The motion was never heard or otherwise disposed. On April 20, 1998 an identical motion was filed (131). That motion was not ruled on. The defendant's current three motions are respectively titled motion to reopen judgment (140), motion to terminate alimony post judgment (141) and motion for return of alimony payments post judgment (142). These motions were heard at the same time that the plaintiff's captioned motion was heard. The plaintiff acknowledged that she had begun dating in March, 1995. The court notes that this action was begun by service of the complaint on the defendant on November 29, 1993. Another man moved and with the plaintiff but did not contribute financial support until after the judgment when defendant stopped paying alimony on a regular basis. In the recent case of Keeys v. Keeys, 31 Conn.L.Rptr. No. 16, 584 (April 29, 2002) the defendant moved to terminate alimony pursuant to 46b-86 (b) of the General Statutes and sought to have the effective date made retroactive to the approximate date on which the plaintiff began residing with another person. The defendant relied on the holding in Milhalyak v. Milhalyak, 30 Conn. App. 516 (1993). In that case the defendant relied solely on the terms of the separation agreement and did not seek termination pursuant to the statute cited supra. The court held that the termination was upon the occurrence of the plaintiff's cohabitation and the said statute was inapplicable. The case must be read in the context of the more recent case of DeMaria v. DeMaria, 247 Conn. 715
91999) wherein the defendant advanced the same argument that his obligation to pay alimony terminated upon the occurrence of cohabitation by the payee. In the alternative he sought relief based on said statute. He further sought reimbursement of all alimony payments paid after the commencement of the cohabitation. The Supreme Court agreed that the trial court had properly construed the term "cohabitation" as used in the dissolution judgment to include the financial impact on the living arrangement of the cohabiting ex-spouse. In the present case the language in paragraph 2.1 states; " . . . or cohabitation, as defined by statute." The language is not self executing in any event. The term of alimony expired on December 12, 1999 and the present motion was not filed until August 29, 2001. The defendant's motions to terminate alimony, and to CT Page 6252 recover previously paid alimony seeks relief beyond the power of this court since alimony cannot be terminated or otherwise modified retroactively, Sanchione v. Sanchione, 173 Conn. 397 (1977).
The motion to reopen fails for the same reasons. There must be a hearing and a determination by a court that the living arrangement of the payee impacts the finances. There is no evidence of a credible nature that the plaintiff's cohabitation around the time of the entry of judgment was assisting her financially. The defendant's failure to prosecute the two earlier motions referred to supra that were timely filed also convinces this court that no fraud has been proven. All three motions of the defendant are denied.
The entire periodic alimony order had accrued before the defendant filed his motions disposed of supra. Therefore, the unpaid portion of the accrued alimony, stipulated above, is due and owed to the plaintiff.
The other issue concerns their boat which the separation agreement provided for as follows:
 "4.2 The Husband shall own solely free and clear from any claim, right, title or interest by the Wife the following personal property:
 (c) the 1984 Jersey Boat, provided, however, that the Husband shall be responsible for any outstanding property taxes or loans on said boat and shall pay and hold the Wife harmless from any liabilities she may have occurred (sic) due to non-payment thereof."
At the time of entry of judgment the defendant filed an affidavit listing "Jersey Boat 40' — after broker — $115,000" as an asset but in the liabilities section he listed "1984 Jersey Boat Central Fid. $115,000 Balloon Note $307.69 weekly payment." The plaintiff did not list either the boat or the balloon note on her affidavit filed at that time. On May 15, 1987 both parties executed a promissory note in the principal amount of $115,000 to acquire a boat described in the note as a 1982 Jersey 40', secured by a ship mortgage (Plaintiff's Exhibits 3 
4). Resolution Trust Corporation as receiver for the original mortgagee assigned the note to Wilshire Credit in July, 1992. Wilshire brought suit in the U.S. District Court, district of Conn. in January, 1995 to recover the boat and to obtain a judgment in personam against both the plaintiff and the defendant (Plaintiff's Exhibit 5). A stipulation of judgment dated September 22d 1995 provided that judgment in the amount of $73,000 with interest at 10 percent per annum be entered with a payment schedule providing for $1000 per month for two years, $1,389.44 monthly or the next CT Page 6253 48 months and a balloon final payment estimated at $10,607.64 and further providing for a judgment lien to be recorded on the real property owned by the plaintiff known as 64 Shorefront Part, South Norwalk, Connecticut. (Plaintiff's Exhibits 8 9). Plaintiff's attorney made demand upon the defendant that he might be held harmless (Plaintiff's Exhibit 7). The monthly payment arrangement failed. The defendant did forward checks to the plaintiff during the first several months but neither party was able to testify to correct amounts. In order to avoid loss of her home the plaintiff remortgaged it on October 10. 1997 in order to raise sufficient money to pay Wilshire $68,926 in full settlement (Plaintiff's exhibits 10, 11, 12, 13, 14). The defendant suffered a heart attack in April, 1995, had open heart surgery the following month and was not working for six months thereafter. The plaintiff has failed to demonstrate to the court that the defendant had or presently has the financial ability to pay the plaintiff any substantial amount of money to honor the hold harmless agreement. To find a person in contempt the evidence must show that the person has the ability to comply with the court order but is willfully refusing to obey although able to do so.
The separation agreement also provided for the award of attorney's fees in the event that either party should breach any term of the agreement. The plaintiff incurred legal fees and costs of $3,560.26 in defending herself in the U.S. District Court. In addition, she has incurred legal fees and costs in prosecuting the present motion and in defending against the defendant's motions ruled on herein as well as one ruled on from the bench. The award of attorneys' fees is subject to evaluation by the court. Shifting of responsibility for payment departs from our general rule that each party is responsible for legal expenses incurred by that party. The award must also be reasonable under the circumstances. The court has examined the billings submitted by the plaintiff's attorneys. The court awards the plaintiff $20,000 as an allowance to defray her legal expenses.
The plaintiff has also requested interest but the request is denied.
In summary, the defendant is found to be indebted to the plaintiff for unpaid alimony of $160,425; payment to Wilshire of $68,926; attorney's fees of $3,560, allowed for defending same; and $20,000 allowed in the present hearing for a total debt of $252,911.
The defendant's financial affidavit states that he is the general manager of Murphy Moving Storage, Inc. He lists his weekly wage as $1,000 gross and $700 net after taxes. He is ordered to pay $200 weekly in reduction of the accrued alimony arrears. This order of payment is based on the court's understanding that said payments are deductible by the defendant and taxable to the plaintiff. The defendant shall also pay CT Page 6254 $25 weekly in reduction of the remaining debt. First payments shall be due and payable on June 7, 2002.
So Ordered.
HARRIGAN, J.T.R.