REBECCA NATION-BAILEY *v.* ADRIAN
PETER BAILEY
(AC 34606)

Bear, Sheldon and Borden, Js.

Argued April 8—officially released July 23, 2013

*Adrian P. Bailey*, self-represented, the appellant (defendant).

*David N. Rubin*, for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant, Adrian Peter Bailey, appeals from the judgment of the trial court modifying his unallocated alimony and child support payments to the plaintiff, Rebecca Nation-Bailey, and finding him in contempt. On appeal, the defendant claims that the court improperly (1) modified, rather than terminated, his alimony payments upon the plaintiff's cohabitation pursuant to the parties' separation agreement (agreement), which was incorporated into the judgment dissolving their marriage and contained a self-executing provision terminating alimony in the event of cohabitation, and (2) found him in contempt. We agree that the termination provision was self-executing and that alimony terminated when the plaintiff began cohabiting. Accordingly, we reverse the judgment of the trial court.

The following facts inform our review. The parties intermarried on July 4, 1999, and one child was born of their union. On February 21, 2007, the court, incorporating by reference the terms of the agreement, entered a judgment dissolving the parties' marriage. The relevant portions of the agreement are as follows.

Section 3 (B) provides in relevant part: "Unallocated alimony and child support shall be paid until the death of either party, the [plaintiff's] remarriage or cohabitation as defined by Conn. General Statutes § 46b-86 (b), or until August 1, 2011."

Section 3 (F) provides: "In the event of the termination of the alimony payments during the minority of the child, the parties shall determine the amount of child support to be paid by the [defendant] during his lifetime to the [plaintiff] for the support of child and

in the event they are unable to agree, the amount of such child support payments shall be determined by a court of competent jurisdiction. Said amount shall be paid retroactive to the date of the termination of alimony."

On May 25, 2010, the defendant filed a postjudgment motion for modification of unallocated support, medical and other expenses. On November 24, 2010, the plaintiff filed a motion for contempt, alleging, in part, that the defendant was in wilful contempt for failing to pay unallocated alimony and child support as ordered in the dissolution judgment. On April 21, 2011, the defendant filed a motion to "enforce termination of unallocated support and for other relief," arguing that, by virtue of the self-executing language of § 3 (B) of the agreement, the unallocated alimony and child support obligation had terminated in December, 2007, because the plaintiff, at that time, was cohabiting, as defined by § 46b-86 (b). On July 7, 2011, the plaintiff filed a postjudgment motion for child support, requesting that the court enter child support orders if it found that the unallocated alimony and child support order had been terminated.

On April 17, 2012, following a hearing, the court found that there had been a substantial change in circumstances warranting a reduction in the defendant's unallocated alimony and child support obligation, and the court ordered the defendant to pay $200 per week to the plaintiff in such unallocated alimony and support. The substantial change in circumstances was that the plaintiff and her then fiancé, Steven Cooper, had executed a lease together and that they had cohabited from December, 2007, through late March, 2008, with Cooper sharing some of the plaintiff's living expenses during that period, thus altering her financial needs. The court substantively applied § 46b-86 (b) and ordered that the

defendant's unallocated support obligations were suspended during the time of the plaintiff's cohabitation, but that, otherwise, he continued to owe her unallocated alimony and child support. Further, the court found that the defendant was in contempt for not having paid such unallocated support to the plaintiff for a six month period prior to his filing the May 24, 2010 motion for modification. This appeal followed.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citations omitted; internal quotation marks omitted.) *Tuckman* v. *Tuckman*, 308 Conn. 194, 200, 61 A.3d 449 (2013).

On appeal, the defendant claims that the court, having improperly applied the substantive terms of § 46b-86 (b), modified the judgment by suspending his unallocated alimony and support payments for four months, rather than, as required by § 3 (B) of the agreement, terminating such payments upon the plaintiff's cohabitation in December, 2007. We agree.

"Section 46b-86 (b), known as the 'cohabitation statute,' provides in pertinent part that a court may 'modify such judgment and suspend, reduce or terminate the

payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, [suspension, reduction or termination] . . . of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party.'" *D'Ascanio* v. *D'Ascanio*, 237 Conn. 481, 485–86, 678 A.2d 469 (1996). Therefore, in order to find that the plaintiff was cohabiting with Cooper, the defendant had to prove that (1) the plaintiff was living with Cooper, and (2) the living arrangement with Cooper caused a change of circumstances so as to alter the financial needs of the plaintiff. See id., 486.

In this case, there is no dispute that the court found that the plaintiff had cohabited with Cooper, causing a change of circumstances so as to alter the plaintiff's financial needs, for a four month period, beginning in December, 2007, thus satisfying the requirements for cohabitation contained in § 46b-86 (b).[1] Because the agreement clearly provides that alimony terminates upon the death of either party, the remarriage or cohabitation of the plaintiff as defined in § 46b-86 (b), or on August 1, 2011,[2] we conclude that the court improperly

[1] Although the court determined that the plaintiff and Cooper signed their lease on December 9, 2007, the court may need to determine the exact date they began cohabiting.

[2] "Black's Law Dictionary (4th Ed. 1968) defines . . . 'until' in pertinent part as '[a] word of limitation, used ordinarily to restrict that which precedes to what immediately follows it, and its office is to fix some point of time or some event upon the arrival or occurrence of which what precedes will cease to exist.'" *Harbour Pointe, LLC* v. *Harbour Landing Condominium Assn., Inc.*, 300 Conn. 254, 285, 14 A.3d 284 (2011) (*Vertefeuille, J.*, dissenting). Therefore, the use of such term in the second sentence of § 3 (B) of the agreement, which provides that "[u]nallocated alimony and child support shall be paid until the death of either party, the [plaintiff's] remarriage or cohabitation as defined by Conn. General Statutes § 46b-86 (b), or until August 1, 2011," delineates four events, the occurrence of any one of which causes the immediate termination of such unallocated alimony and child support. The phrase "cohabitation as defined by . . . § 46b-86 (b)" has been interpreted by our Supreme Court to require that (1) the former

modified the unallocated alimony and child support order by applying § 46b-86 (b) instead of terminating such order as of the initial date of the plaintiff's cohabitation, as required by § 3 (B) of the agreement incorporated by reference in the judgment. We further conclude that the court failed to make findings concerning child support for the period beginning after the date of cohabitation and to enter any necessary orders related thereto.

The plaintiff argues that the court's decision was correct and the agreement was not self-executing because it specifically referenced § 46b-86 (b) and that, therefore, the court had the authority to "suspend, reduce or terminate the payment of periodic alimony"; General Statutes § 46b-86 (b); as is contemplated by the statute. The plaintiff relies on two cases, namely, *Krichko* v. *Krichko*, 108 Conn. App. 644, 948 A.2d 1092, cert. granted, 289 Conn. 913, 957 A.2d 877 (2008) (appeal withdrawn May 19, 2009), and *Mihalyak* v. *Mihalyak*, 30 Conn. App. 516, 620 A.2d 1327 (1993), to support her argument that because the agreement references § 46b-86 (b), the alimony award is not terminated upon cohabitation, although that is the sole remedy set forth in the agreement. She argues that any reference to § 46b-86 (b) in the agreement means that the court has the authority in the event of cohabitation to modify the amount of, to suspend or to terminate alimony, despite any limitation of or delineation of a remedy in the agreement. We disagree.

spouse was living with a third party, and (2) the living arrangement with the third party caused a change of circumstances so as to alter the financial needs of the former spouse. See *D'Ascanio* v. *D'Ascanio*, supra, 237 Conn. 486. The use of such phrase in a separation agreement incorporated into a judgment does not give the court the authority to utilize any and all of the remedies, e.g., suspension, modification or termination, set forth in § 46b-86 (b), when a party moves to modify pursuant to the provisions of such agreement. See id., 489–90.

The cases relied on by the plaintiff do not stand for the proposition for which she argues. In *Krichko*, this court held that the trial court improperly had "failed to conclude that the plaintiff's alimony obligation terminated as of the date the defendant began cohabiting, pursuant to the separation agreement"; *Krichko* v. *Krichko*, supra, 108 Conn. App. 652; but, instead, had relied on § 46b-86 despite the fact that the agreement did not reference § 46b-86 and the plaintiff had not relied on § 46b-86 in his motion for modification. See id., 649–52. In *Mihalyak*, as in *Krichko*, neither the separation agreement nor the plaintiff's motion to modify alimony referenced § 46b-86 (b). *Mihalyak* v. *Mihalyak*, supra, 30 Conn. App. 520–21. We held in *Mihalyak* that under such circumstances, the provisions of § 46b-86 are inapplicable and that the clear terms of the agreement govern. Id., 521. Additionally, neither *Mihalyak* nor *Krichko* discussed whether a reference to § 46b-86 (b) in an agreement, specifically to define the meaning of cohabitation, would have an impact on the analysis set forth in each of those opinions.

We look to our Supreme Court's opinion in *D'Ascanio* v. *D'Ascanio*, supra, 237 Conn. 481, for guidance on the issue of whether the agreement's self-executing provision terminating alimony in the event of cohabitation should have been enforced by the court after it found that the plaintiff had cohabited as defined in § 46b-86 (b). In *D'Ascanio*, the relevant term of the parties' modification agreement, which was incorporated into the judgment of dissolution, provided that the plaintiff's alimony obligation would be reduced to $350 per week in the event that the defendant "remarries or cohabitates, as defined by statute . . . ." (Emphasis omitted.) Id., 484. The trial court concluded, despite the language of the agreement, that it had the authority to modify the plaintiff's alimony obligation to an amount that it concluded was equitable. Id., 485, 488. On appeal,

our Supreme Court concluded that because the modification agreement defined cohabitation by reference to § 46b-86 (b); id., 485; once the trial court found that the defendant had cohabited as defined in § 46b-86 (b), "the court should have enforced the terms of the modification agreement . . . ." Id., 489–90. Accordingly, it reversed the judgment of the trial court and remanded the case with direction to that court to render judgment reducing the plaintiff's weekly alimony payment, in accordance with the terms of the modification agreement, from $700 to $350, retroactive to the date the defendant began cohabiting. Id., 490.

The language of the modification agreement in *D'Ascanio* is similar to the language in the present case, in that it defines cohabitation by reference to § 46b-86 (b). In *D'Ascanio*, the modification agreement provided that alimony was not modifiable by either party "except that in the event that the defendant *remarries or cohabitates, as defined by statute*, the alimony shall be reduced by one half ($350)." (Emphasis added; internal quotation marks omitted.) Id., 483 n.1. In the present case, the agreement provides that the defendant shall pay unallocated alimony and child support "*until* the death of either party, the [plaintiff's] remarriage or *cohabitation as defined by Conn. General Statutes § 46b-86 (b)*, or until August 1, 2011." (Emphasis added.) We therefore conclude that *D'Ascanio* governs this case and that the court improperly modified the defendant's alimony obligation pursuant to the remedies available in § 46b-86 (b), rather than terminating the plaintiff's alimony as of the initial date of cohabitation as required by § 3 (B) of the agreement, which was incorporated by reference in the judgment.[3] See also

---

[3] In light of our conclusion that the court improperly modified the defendant's alimony obligation rather than terminating it as of the initial date of cohabitation, we also conclude that the trial court on remand must conduct a new hearing on the plaintiff's motion for contempt.

*DeMaria* v. *DeMaria*, 247 Conn. 715, 722, 724 A.2d 1088 (1999) (both requirements for cohabitation set forth in § 46b-86 [b] apply to judgment even when judgment does not define cohabitation or reference statute); but see *Remillard* v. *Remillard*, 297 Conn. 345, 356–57, 999 A.2d 713 (2010) (trial court's construction of ambiguous term " 'cohabitation' " in separation agreement as requiring romantic or sexual relationship was not clearly erroneous, it having been supported by ample evidence in record, including testimonial evidence as well as other language in separation agreement).

We next must consider the issue of child support following the termination of alimony, as of the initial date of cohabitation, pursuant to § 3 (F) of the agreement, which provides in part that in the "event of the termination of the alimony payments during the minority of the child, the parties shall determine the amount of child support to be paid by the [defendant] during his lifetime to the [plaintiff] for the support of the child and in the event they are unable to agree, the amount of such child support payments shall be determined by a court of competent jurisdiction. Said amount shall be paid retroactive to the date of the termination of alimony." We also are aware that the parties have resided in California since 2007[4] and that the parties have represented that there has been a change in custody of their child granted by the court in California.[5] In his appellate brief and during oral argument before this court, the defendant stated that child support is not an issue in this appeal and that it

[4] It is uncontested that the parties moved to California shortly after the dissolution of their marriage in 2007.

[5] The defendant testified before the trial court that there have been fifty-six "hearings in California mostly related to custody issues, since the dissolution. We've had two custody evaluations; the result of which is that I now have sole, legal custody of my son." The plaintiff also acknowledged that the defendant was granted sole legal custody of the child, with shared physical custody to the parties, on November 1, 2010.

would be handled in California, retroactive to the date alimony terminated. He also argued the same before the trial court, and the plaintiff did not contest his representations. Additionally, the defendant argues that California, not Connecticut, has jurisdiction over child support pursuant to the Uniform Interstate Family Support Act, General Statutes § 46b-212h (a), because both parties would have to agree to permit Connecticut to consider the issue, and he has not agreed.

Section 46b-212h (a) provides: "The Family Support Magistrate Division or the Superior Court that has issued a support order consistent with the law of this state has and shall exercise continuing exclusive jurisdiction to modify its child support order if such order is the controlling support order and: (1) At the time of the filing of a request for modification this state is the residence of the obligor, the individual obligee or the child for whose benefit the support order is issued; or (2) if this state is not the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued, the parties consent in a record or in open court that the Family Support Magistrate Division or the Superior Court may continue to exercise jurisdiction to modify its order."

In this case, the defendant filed a motion for modification of the unallocated alimony and child support order on May 25, 2010, and a motion to terminate unallocated alimony and child support on April 21, 2011. Both of these motions implicate child support. See generally *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 558–61, 46 A.3d 112 (2012); id., 558 ("[e]ven though an unallocated order incorporates alimony and child support without delineating specific amounts for each component, the unallocated order, along with other financial orders, necessarily includes a portion attributable to child support in an amount sufficient to satisfy the guidelines").

To argue that he did not agree to Connecticut's continuing jurisdiction over child support is disingenuous. Certainly the automatic termination of his alimony obligation upon the plaintiff's cohabitation would not terminate his child support obligation. See generally id. Additionally, the plaintiff filed a motion for child support on July 7, 2011, thereby also agreeing to Connecticut's jurisdiction over the issue of child support. Furthermore, there is nothing in the record that establishes that the unallocated alimony and child support order is not the "controlling support order" for purposes of child support under § 46b-212h (a). We conclude that additional findings on issues relating to child support are necessary and that the trial court on remand should make such findings and establish any necessary orders.

The judgment is reversed and the case is remanded with direction to render judgment terminating the defendant's alimony obligation as of the initial date of the plaintiff's cohabitation, and for further proceedings consistent with this opinion on the defendant's child support obligation and on the plaintiff's motion for contempt.

In this opinion SHELDON, J., concurred.

BORDEN, J. dissenting. I disagree with the majority that the trial court improperly temporarily suspended, rather than terminated, the unallocated alimony and support award contained in the judgment. I therefore dissent.

As the majority states, the defendant, Adrian Peter Bailey, challenges on appeal the trial court's *modification* of his unallocated alimony and support[1] obligation to the plaintiff, Rebecca Nation-Bailey, claiming that the court was required to *terminate* the alimony part

---

[1] Because I agree with the majority regarding the challenge to the support part of the judgment, I do not discuss it here.

of the judgment, rather than to modify it. Thus, the issue in this case is whether the language of the separation agreement, as incorporated into the judgment of dissolution sought to be modified—"[u]nallocated alimony and child support shall be paid until the death of either party, the [plaintiff's] remarriage or cohabitation as defined by Conn. General Statutes § 46b-86 (b)"[2]—gave the court the full panoply of remedies provided by § 46b-86 (b), including the power to "modify . . . and suspend . . . the payment of periodic alimony . . . ." I would answer that question in the affirmative.

The majority concludes, in effect, that the judgment's reference to "cohabitation as defined by [General Statutes] § 46b-86 (b)" means only the reference to the statutory definition of cohabitation and does not include the court's remedial powers under that statute. I disagree. I conclude, to the contrary, that the judgment's reference to "cohabitation as defined by [General Statutes] § 46b-86 (b)" must, as a matter of law, be read to include the court's full panoply of powers under the statute, including, as in the present case, the power to suspend periodic alimony.

I take a moment to restate the facts as found by the court. The court found that the plaintiff and her then fiancé had lived together from December, 2007, through March, 2008—a total of four months—under, in the language of the statute, "circumstances as to alter the

---

[2] General Statutes § 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

financial needs of [the plaintiff]." General Statutes § 46b-86 (b). Thus, the court, exercising its powers under the statute, took the commonsense position of suspending the alimony obligation for that period and denied the defendant's motion that the alimony be terminated forever. It is this position that the defendant challenges on appeal and the majority holds was an abuse of discretion by the court, on the ground that the language of the judgment required termination. I submit that this holding is contrary to a proper reading of the statute and of the case law under it and violates the well-worn axiom that "[i]t is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom." (Internal quotation marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 266, 765 A.2d 505 (2001).

First, I address the scope of review. The majority's conclusion reverses the trial court's construction of the judgment. That presents a question of law for the court—trial and appellate—which we review de novo, in which "[t]he determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole," to be ascertained from the language and the surrounding circumstances. (Internal quotation marks omitted.) *Racsko* v. *Racsko*, 102 Conn. App. 90, 92, 924 A.2d 878 (2007). In addition, this case necessarily involves the construction of a statute, namely, § 46b-86 (b), which also calls for de novo review. See *Blum* v. *Blum*, 109 Conn. App. 316, 322, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008).

Second, I turn to the statute itself. In this regard, I first note that the statute does not even contain the word "cohabitation." Instead, it uses "the broader language of 'living with another person' rather than 'cohabitation.' " *DeMaria* v. *DeMaria*, 247 Conn. 715, 720, 724 A.2d 1088

(1999). Thus, the majority's focus on the language "cohabitation as defined by Conn. General Statutes § 46b-86 (b)" as limited to the statutory definition, without also including the accompanying remedial powers of the court, finds no support in the actual language of the statute.

Furthermore, the entire subsection (b) of the statute consists of one long sentence. Thus, although the statute obviously has two substantive components—(1) living together, (2) under circumstances that alter the financial needs of the alimony receiver—linguistically it links the two together in one sentence. Moreover, the statute *begins* with the remedial powers of the court: the court "may . . . modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party." General Statutes § 46b-86 (b). Thus, the majority's slicing of the purported definitional part from the remedial part is simply inconsistent with the language of the statute.

Additionally, it is equally inconsistent with the purpose of the statute, which is "an express grant of authority to *modify or terminate* alimony upon [a] showing that the receiving party is living with another person and that such living arrangements result in a change of circumstances that alter the financial needs of such party." (Emphasis added; internal quotation marks omitted.) *DeMaria* v. *DeMaria*, supra, 247 Conn. 722. Thus, this broad remedial purpose, which expressly acknowledges the court's equitable power to remedy a wrong on a case-by-case basis, argues persuasively for

affording the court the full panoply of its powers under the statute.

Furthermore, this court has explicitly recognized, in the context of interpreting § 46b-86 (b), that "[i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result." (Internal quotation marks omitted.) *Blum* v. *Blum*, supra, 109 Conn. App. 322. The majority's conclusion violates these wise principles of statutory interpretation. Section 46b-86 (b) is part of the web of dissolution statutes, of which one of the hallmarks is the court's power to act equitably. See *Pasquariello* v. *Pasquariello*, 168 Conn. 579, 585, 362 A.2d 835 (1975) ("[t]he power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage"). Thus, in accord with those principles, I would read the statute, as applied to the judgment in the present case, to incorporate, rather than to restrict, the court's commonsense exercise of its equitable powers under the statute.

Third, I examine the applicable case law. *DeMaria* v. *DeMaria*, supra, 247 Conn.715, holds that the statute operates to its full extent even when the judgment under consideration does not mention the statute. In that case, the judgment under consideration for modification referred only to "cohabitation," without any reference to the statute at all. The court held, nonetheless, that, using the statute as a source of common-law policy, the trial court, in importing the additional requirement of a change of financial circumstances, "was guided properly by the statute." Id., 722. The court "conclude[d], in accordance with the definition contained in § 46b-86 (b), that the trial court properly construed

the term 'cohabitation' as used in the dissolution judgment to include the financial impact of the living arrangements on the cohabiting spouse . . . ." Id., 719–20. It is difficult, therefore, to understand why a specific reference to the statute would, as the majority concludes, somehow deprive the court of the same statutory powers, namely, to refer to the statute for a definition of its powers in the case of a cohabiting spouse.

Similarly, in *Racsko*, the judgment provided for alimony for a period of seven years, "nonmodifiable as to term, unless the [defendant] or [plaintiff] dies, remarries, or cohabitates as defined by statute." *Racsko* v. *Racsko*, supra, 102 Conn. App. 91. The defendant sought an order terminating the alimony on the basis of *his* cohabitation, arguing that the unambiguous language of the judgment required that result. Id. The trial court denied the motion and, instead, modified the judgment to reduce the alimony. Id. On appeal, this court read the language of the judgment as referring to § 46b-86 (b), even though the statute was not specifically referenced, and held that the trial court properly interpreted the ambiguous language of the judgment as incorporating the powers of the court under the statute. Id., 92–93. Again, it is difficult to square the majority's cramped reading of the judgment in the present case with this court's more flexible reading of the judgment and statute in *Racsko*.

The majority principally relies for its conclusion on *D'Ascanio* v. *D'Ascanio*, 237 Conn. 481, 678 A.2d 469 (1996), on the use of the word "until" in the judgment, and on the fact that the reference to cohabitation is part of a list of purportedly self-executing termination of alimony contingencies. This reliance is unpersuasive.

In *D'Ascanio*, the parties had stipulated in the trial court that, if the trial court found cohabitation, it was

required to reduce the alimony award by one half; id., 488; and, therefore, "[t]he only issue raised before the court was whether the defendant was cohabiting with [the third party] within the meaning of § 46b-86 (b)." Id.; see id., 489 ("[w]e agree that the sole issue to be resolved by the trial court, as framed by the parties, was whether there was cohabitation between the defendant and [the third party]"). *D'Ascanio* did not address, and cannot be read to bear on, the issue in the present case, in which there was no such stipulation and in which the parties did address the issue of whether the court had the power to suspend, rather than to terminate, the alimony.

The majority puts more weight on the word "until" than it can bear. The use of that word in the judgment is equally consistent with the trial court's ruling in the present case, because by suspending the alimony, rather than terminating it as sought by the defendant, the word could carry a similar meaning: for example, the alimony continues "until" cohabitation under the statute, which carries the court's range of equitable powers.

Finally, the majority's emphasis on the fact that the term "cohabitation" is part of a series of otherwise self-executing factors—namely, death or remarriage of the receiving party—is also flawed. Section 3 (B) of the judgment, which contains the specific language at issue, provides that "[u]nallocated alimony *and child support* shall be paid until the death of either party, the [plaintiff's] remarriage or cohabitation as defined by . . . § 46b-86 (b) . . . ." (Emphasis added.) Yet it is undisputed that "child support" does not end with remarriage of the plaintiff. Thus, the majority's reliance on the fact that death or remarriage are self-executing to terminate alimony is misplaced, because termination of child support would not be self-executing. Instead, it is apparent that, contrary to the majority's reading of the language of the judgment, it was not so perfectly drawn as to

support the majority's reading of it; it is simply a somewhat carelessly drawn clause that was not intended to carry with it the nicely sliced parsing employed by the majority.

I therefore dissent, and would affirm the trial court's order temporarily suspending the unallocated alimony and support.