## SHARON REMILLARD *v.* BRADFORD REMILLARD
### (SC 18485)

Rogers, C. J., and Norcott, Katz, Palmer and Zarella, Js.

---

Argued March 17—officially released July 13, 2010

*Susan King Shaw*, for the appellant (plaintiff).

*Karen E. Haley*, for the appellee (defendant).

ZARELLA, J. The plaintiff, Sharon Remillard, appeals[1] from the trial court's denial of her postdissolution motion to terminate her obligation to pay alimony to the defendant, Bradford Remillard, on the basis of the defendant's cohabitation with an unrelated female. The plaintiff claims that the trial court improperly (1) failed to apply the criteria set forth in General Statutes § 46b-86 (b)[2] in determining whether to terminate the plaintiff's alimony obligation, and (2) interpreted the term "cohabitation," as used in the parties' separation agreement, as requiring proof of a romantic or sexual relationship between the defendant and the unrelated female with whom he resides. We affirm the trial court's decision.

The record reveals the following relevant facts and procedural background. The parties were married on November 8, 1975. On January 24, 2002, the plaintiff filed an action for the dissolution of the marriage on the ground that the marriage had broken down irretrievably with no hope of reconciliation. On October 23, 2002, the trial court rendered judgment dissolving the parties' marriage. The judgment incorporated by reference a separation agreement that the parties had entered into on the same date. The agreement provided in relevant

---

[1] The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

part that the plaintiff shall pay the defendant alimony in the amount of $125 per week and that "[s]aid alimony shall terminate upon . . . the [defendant's] cohabitation with [an] unrelated female." The agreement further provided that "[t]his alimony shall be non-modifiable as to term and amount."

In 2007, the plaintiff began to suspect that the defendant was residing with an unrelated female, and, on August 17, 2007, she hired a private investigator to conduct surveillance of the defendant to determine his current place of residence and whether anyone was residing with him at that residence. In September, 2007, the private investigator informed the plaintiff that the defendant was residing with Katie Crovo at 49 Iron Works Road in the town of Clinton. On the basis of this information, the plaintiff stopped paying alimony to the defendant in October, 2007, and, on February 14, 2008, the plaintiff filed a motion to terminate alimony. The defendant subsequently filed a motion for contempt on the ground that the plaintiff was in violation of the court's October 23, 2002 judgment for failure to pay alimony.

On June 13, 2008, the trial court held an evidentiary hearing on the parties' motions, at which the parties testified as to their respective understandings of the term "cohabitation" as used in the separation agreement. The plaintiff testified that she understood the term "cohabitation" to mean "living with and sharing expenses with" another person. In her view, a romantic or sexual relationship is not required to satisfy the definition of "cohabitation." In contrast, the defendant testified that he understood the term "cohabitation" to mean living together in a manner akin to husband and wife, such that a romantic or sexual relationship is required. In addition, the parties offered conflicting testimony regarding whether the meaning of the term "cohabitation" was discussed as a group between the parties

and their attorneys when they executed the separation agreement. The defendant testified that such a discussion occurred and that the attorneys explained that the term "cohabitation" had a standard legal meaning that includes a romantic or sexual component. The plaintiff testified, however, that there was no discussion regarding the meaning of the term "cohabitation."

The defendant also testified as to his living arrangements. Specifically, he admitted that, since November, 2006, he had been sharing a residence with Crovo, a female to whom he is not related. He further testified that he and Crovo each pay 50 percent of the rent and utilities for the residence. The defendant denied, however, that he ever had been in a romantic or sexual relationship with Crovo. To the contrary, the defendant testified that his relationship with Crovo, who is twenty-five years younger than him, is merely that of "coworkers who happen to live together."[3] In addition, he testified that Crovo is romantically involved with another person, and that he and Crovo rarely socialize together. Finally, the defendant testified that the house in which he and Crovo reside has three bedrooms and two bathrooms, and that he and Crovo occupy different bedrooms and use different bathrooms.

On October 16, 2008, the trial court held oral argument on the parties' motions. The plaintiff argued that the Appellate Court's recent decision in *Krichko* v. *Krichko*, 108 Conn. App. 644, 948 A.2d 1092, cert. granted, 289 Conn. 913, 957 A.2d 877 (2008) (appeal withdrawn May 19, 2009), was "exactly on point" in that the plaintiff in *Krichko*, "as in this case," was "not relying [on] the provisions of [§] 46b-86" but, rather, based his motion to terminate alimony "solely [on] language in [his] separation agreement that is very, very

[3] At the time of the hearing, the defendant and Crovo were both employed at the same supermarket.

similar to the language in the Remillards' agreement."
The plaintiff further agreed with the court that the
meaning of the term "cohabitation," as used in the par-
ties' separation agreement, was a "factual issue," but
added that *Krichko* and *Mihalyak* v. *Mihalyak*, 30 Conn.
App. 516, 620 A.2d 1327 (1993), nonetheless were
instructive with respect to this issue.

The trial court found that the term "cohabitation,"
as used in the parties' separation agreement, "would
require [the defendant] to be living with another adult
female in circumstances akin to marriage, or at least
in a romantic [or] sexual relationship," and that the
defendant's living arrangements did not rise to that
level. Accordingly, the trial court denied the plaintiff's
motion to terminate alimony. The court further
remarked that, in both *Krichko* and *Mihalyak*, the party
receiving alimony was in a romantic relationship with
the unrelated adult with whom she resided; thus, those
cases did not present the issue of whether the term
"cohabitation" *required* a sexual or romantic compo-
nent. With regard to the defendant's motion for con-
tempt, the court determined that the plaintiff was not
in wilful contempt of the court's October 23, 2002 judg-
ment because the court found that the plaintiff reason-
ably believed that her alimony obligation had ended
under the terms of the separation agreement. Accord-
ingly, the court denied the motion for contempt. This
appeal followed.[4]

The plaintiff's first claim is that the trial court improp-
erly failed to apply the statutory criteria set forth in
§ 46b-86 (b) in ruling on the plaintiff's motion to termi-
nate alimony. Specifically, the plaintiff contends that
our decision in *DeMaria* v. *DeMaria*, 247 Conn. 715,

---

[4] The defendant has not appealed from the trial court's denial of his motion
for contempt. The only appeal before this court is the plaintiff's appeal,
which concerns the trial court's denial of her motion to terminate alimony.

724 A.2d 1088 (1999), is controlling and requires the trial court to consider the mandates and limitations of § 46b-86 (b) in terminating or modifying alimony, even when the language of the judgment of dissolution employs only the term "cohabitation," without reference to any statute. The defendant responds that the plaintiff waived her claim regarding the application of § 46b-86 (b) to the present dispute because the plaintiff failed to satisfy the notice requirements set forth in § 46b-86 (b) and failed to invoke the statute as a basis for the termination of the defendant's alimony. We decline to reach the merits of this claim because the plaintiff failed to raise it in the trial court.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Citations omitted; internal quotation marks omitted.) *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"). "The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis in original; internal quotation marks omitted.) *State* v. *Colon*, 82 Conn. App. 658, 659, 847 A.2d 315, cert. denied, 269 Conn. 915, 852 A.2d 745 (2004); accord *Sgueglia* v. *Milne Construction Co.*, 212 Conn. 427, 432 n.5, 562 A.2d 505 (1989); see also *McKiernan* v. *Caldor, Inc.*, 183 Conn. 164, 166, 438 A.2d 865 (1981) (issue "briefly suggested" in trial court is not distinctly raised). "The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial—after it is too late for the trial court . . . to address the claim—would

encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Internal quotation marks omitted.) *State* v. *Dalzell*, 282 Conn. 709, 720, 924 A.2d 809 (2007).

In the present case, a review of the transcripts from the June 13, 2008 evidentiary hearing and the October 16, 2008 oral argument on the motions reveal that the plaintiff not only failed to raise a claim under § 46b-86 (b) but also repeatedly advised and agreed with the trial court that that statute was not at issue. First, the plaintiff failed to invoke § 46b-86 (b) in her written motion to terminate alimony. That motion provides: "Pursuant to the [*j*]*udgment of* [*the trial*] *court* dated October 23, 2002, the [d]efendant's alimony terminates upon his cohabitation with an unrelated female. The [d]efendant is currently cohabitating and, therefore, the [p]laintiff moves to have his alimony terminated." (Emphasis added.) Notably, the plaintiff's motion fails to mention § 46b-86 (b) or otherwise apprise the court or the defendant that the plaintiff seeks relief under that statute. We previously have stated that "§ 46b-86 (b) is a separate and independent statutory basis for the modification of alimony and *is a claim* [*that*] *must be raised in a written motion* by the party seeking to modify the award of periodic alimony." (Emphasis added.) *Connolly* v. *Connolly*, 191 Conn. 468, 478, 464 A.2d 837 (1983). In addition, Practice Book § 10-3 (a) provides in relevant part that, "[w]hen any claim made in a . . . pleading is grounded on a statute, the statute shall be specifically identified by its number." The plaintiff has failed to comply with these rules.

Moreover, during the evidentiary hearing and oral argument, the plaintiff repeatedly advised the trial court and agreed with the trial court's conclusion that her claim was being brought pursuant to the parties' separa-

tion agreement and not § 46b-86 (b).[5] Clearly then, there can be no question that the plaintiff did not raise a claim pursuant to § 46b-86 (b) before the trial court. Accordingly, we decline to reach the merits of her claim on appeal. "To reach a contrary conclusion would result in an ambush of the trial court by permitting the [plaintiff] to raise a claim on appeal that . . . her counsel expressly had abandoned in the trial court." *State* v. *Holness*, 289 Conn. 535, 543, 958 A.2d 754 (2008).

The plaintiff's second claim is that the trial court improperly interpreted the term "cohabitation," as used in the parties' separation agreement, as requiring proof of a romantic or sexual relationship.[6] The plaintiff con-

---

[5] First, at the beginning of the evidentiary hearing, the trial court asked counsel the following questions: (1) "I'm only dealing with the alimony provision of [a]rticle [t]wo [of the separation agreement]?" (2) "I guess I don't need financial affidavits because we're not dealing with any financial issues. We're just dealing with whether or not there's been cohabitation such that the alimony would terminate, is that correct?" The plaintiff's counsel responded affirmatively to both questions. These exchanges are significant because § 46b-86 (b) requires a showing that the party receiving alimony "is living with another person under circumstances which . . . alter the financial needs of that party." Thus, the response by the plaintiff's counsel that financial affidavits were unnecessary demonstrates that the plaintiff was not pursuing her claim for termination of alimony under § 46b-86 (b). Similarly, the failure of the plaintiff or the plaintiff's counsel, at the conclusion of the hearing, to respond when the trial court stated that it was its view that "it doesn't look like we dealt with the statute here," further indicates that the plaintiff was not pursuing a statutory claim.

Various exchanges between the trial court and the plaintiff's counsel during oral argument on the motions also confirm that the plaintiff was not seeking relief pursuant to § 46b-86 (b). Specifically, the court stated, "I'm not dealing with the statute," and the plaintiff's counsel responded, "[r]ight." Furthermore, the plaintiff's counsel expressly argued that the Appellate Court's recent decision in *Krichko* was "exactly on point" in that the plaintiff in *Krichko*, "*as in this case*," was "*not relying* [*on*] *the provisions of* [*§*] *46b-86*" but, rather, based his motion to terminate alimony "*solely* [*on*] *language in* [*his*] *separation agreement that is very, very similar to the language in the Remillards' agreement*." (Emphasis added.)

[6] We note that the parties did not litigate whether the term "cohabitation," as used in the parties' separation agreement, required proof of a change in the defendant's financial circumstances.

tends that our decision in *DeMaria* "clearly eschewed the more narrow, traditional view of 'cohabitation' . . . as 'a dwelling together of man and woman in the same place in the manner of a husband and wife.' " The plaintiff further argues that "the burden of proving, even by circumstantial evidence, that a man and a woman, unrelated to each other, who reside under the same roof, are mere roommates or romantic partners, can be virtually insurmountable without an invasion of privacy."

The defendant responds that the trial court properly interpreted the term "cohabitation" as requiring proof of a romantic or sexual relationship. Specifically, the defendant asserts that the separation agreement's use of the phrase "cohabitation *with* [*an*] *unrelated female*"; (emphasis added); evidences that the parties intended for the term "cohabitation" to encompass a romantic or sexual element; otherwise, it would have been unnecessary to describe the gender or relationship of the cohabitant. The defendant further argues that both parties were represented by counsel during the dissolution proceedings and had the opportunity to use or make reference to the broader language contained in § 46b-86 (b), i.e., "living with another person," but, instead, agreed to use the narrower language contained in the agreement. We conclude that the trial court properly construed the term "cohabitation" as used in the parties' separation agreement.

We begin our analysis of this claim by setting forth the applicable standard of review and principles of law. It is well established that a separation agreement, incorporated by reference into a judgment of dissolution, "is to be regarded and construed as a contract." *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999). Accordingly, our review of a trial court's interpretation of a separation agreement "is guided by the general principles governing the construction of contracts." (Internal

quotation marks omitted.) Id. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) Id. If a contract is unambiguous within its four corners, "the determination of what the parties intended by their contractual commitments is a question of law." (Internal quotation marks omitted.) Id. "When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *Honulik* v. *Greenwich*, 293 Conn. 698, 711, 980 A.2d 880 (2009).

Accordingly, to determine our standard of review, we first must ascertain whether the term "cohabitation," as used in the parties' settlement agreement, is ambiguous. This is a question of law over which our review is plenary. See, e.g., *Isham* v. *Isham*, 292 Conn. 170, 181, 972 A.2d 228 (2009). "Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . ." (Internal quotation marks omitted.) Id. In contrast, an agreement is ambiguous when its language "is reasonably susceptible of more than one interpretation." Id. Nevertheless, "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) Id.

In the present case, the parties' separation agreement does not define the term "cohabitation." Consequently, whether such a term is ambiguous turns on whether it has varying definitions in common parlance. See *Honulik* v. *Greenwich*, supra, 293 Conn. 710 (contractual language must be interpreted according to "its common,

natural, and ordinary meaning and usage" [internal quotation marks omitted]). This court previously has observed that the word "cohabitation" is "not inflexible nor is it one of strict or narrow meaning." *DeMaria* v. *DeMaria*, supra, 247 Conn. 720. Although this court previously has defined cohabitation to be "a dwelling together of man and woman in the same place in the manner of husband and wife"; *Wolk* v. *Wolk*, 191 Conn. 328, 332, 464 A.2d 780 (1983); and such definition echoes the definition of "cohabitation" in Black's Law Dictionary; see Black's Law Dictionary (6th Ed. 1990);[7] we also are aware that Webster's Third New International Dictionary not only defines cohabitation in a similar manner but also contains a broader definition of "cohabit," that is, "to live together . . . ." Accordingly, we conclude that the term "cohabitation," as used in the parties' settlement agreement, is susceptible to more than one reasonable interpretation and, thus, is ambiguous. It follows, therefore, that we must apply the clearly erroneous standard of review to the trial court's determination of the meaning of the term "cohabitation" in the present case, which is a question of fact. See, e.g., *Honulik* v. *Greenwich*, supra, 711. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 727, 941 A.2d 309 (2008).

In the present case, there is ample evidence in the record to support the trial court's interpretation of the

---

[7] The sixth edition of Black's Law Dictionary defines "cohabitation" as "[t]o live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations."

term "cohabitation" as requiring a sexual or romantic relationship. At the evidentiary hearing, the defendant testified under oath that, when he entered into the separation agreement, it was his understanding that the term "cohabitation" meant living together in a manner akin to husband and wife. He further testified that, prior to the execution of the agreement, the parties and their respective counsel had had a discussion regarding the meaning of the term "cohabitation" and that counsel had explained that the term "cohabitation" had a standard legal meaning that includes a romantic or sexual component. Although the plaintiff offered conflicting testimony at that hearing, the court, as the trier of fact and thus the sole arbiter of credibility, was "free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *DiVito* v. *DiVito*, 77 Conn. App. 124, 138, 822 A.2d 294, cert. denied, 264 Conn. 921, 828 A.2d 617 (2003).

Finally, we note that the trial court, in addition to relying on the testimonial evidence, also determined that the defendant's interpretation of the term "cohabitation" was supported by other language in the separation agreement. Specifically, the court found that the agreement's use of the modifying phrase, "with [an] unrelated female," evidences that the parties intended for the term "cohabitation" to require a romantic or sexual relationship. Indeed, under the agreement, the defendant could cohabitate with a related female and the condition for terminating alimony would not be triggered. Accordingly, because the trial court's interpretation of the term "cohabitation" is supported by the evidence, and we are not "left with the definite and firm conviction that a mistake has been committed"; (internal quotation marks omitted) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, supra, 285 Conn. 727; we conclude that the trial court's determination was not clearly erroneous.

The decision of the trial court is affirmed.

In this opinion the other justices concurred.