CONNECTICUT NATIONAL BANK *v.* REHAB
ASSOCIATES ET AL.
(SC 18597)
(SC 18598)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan and Eveleigh, Js.

Argued December 7, 2010—officially released March 8, 2011

*Gregory M. Harris,* for the appellant in Docket No. SC 18597 (defendant Steven D. Hallahan).

*Dominic Fulco III,* for the appellant in Docket No. SC 18598 (defendant Richard Ermler).

*C. Donald Neville,* for the appellee in both cases (plaintiff).

*Opinion*

EVELEIGH, J. These appeals arise from a foreclosure action and subsequent deficiency judgment against the defendants, Steven D. Hallahan and Richard Ermler, and their general partnership, Rehab Associates (Rehab), relating to a mortgage loan to Rehab that had

been guaranteed by Hallahan and Ermler. The defendants[1] now appeal[2] from the judgment of the trial court denying Hallahan's motion to determine that the deficiency judgment was fully or, alternatively, partially satisfied as a result of a settlement agreement (agreement) between Ermler and Shawmut Bank Connecticut, N.A. (Shawmut), the successor in interest of the original plaintiff, Connecticut National Bank.[3] On appeal, the defendants assert that the trial court improperly concluded that the agreement did not release Hallahan from his obligation to pay the balance of the deficiency judgment. We agree with the defendants and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to these appeals. In 1989, Rehab executed a promissory note in the amount of $425,000. The note was secured by a mortgage in favor of Connecticut National Bank. The defendants personally guaranteed the note. Thereafter, Rehab defaulted on the loan. As a result, Connecticut National Bank instituted a foreclosure action to collect amounts due on the loan. In 1991, the trial court rendered a judgment of strict foreclosure. Thereafter, the trial court entered a deficiency judgment in the amount of $164,648.11 against Rehab and the defendants (deficiency judgment).

---

[1] Although Rehab, Hallahan and Ermler were named as defendants in the original action, only Hallahan and Ermler are defendants in the present appeal. We refer to them collectively as the defendants, and individually by name when appropriate.

[2] The defendants each appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. We later consolidated these appeals for purposes of oral argument.

[3] We note that, although Connecticut National Bank originally was the plaintiff in the trial court, it later became known as Shawmut, and Shawmut later assigned its rights in the deficiency judgment to Cadle Company, which thereafter was substituted as the plaintiff. In the interest of simplicity, we refer to Cadle Company as the plaintiff.

Connecticut National Bank then became known as Shawmut. Subsequently, in 1993, Ermler and Jerry Brophy[4] entered into a settlement agreement with Shawmut. The agreement provided in relevant part that Ermler and Brophy "are indebted to [Shawmut] by virtue of loans in the aggregate principal amount of [$277,500], plus interest accrued and accruing thereon and all costs and expenses of collection (including, without limitation, attorneys' fees), as evidenced by promissory note(s) in favor of [Shawmut] (the '[i]ndebtedness') . . . ." Pursuant to the agreement, Ermler and Brophy agreed to pay Shawmut $42,150 "as payment in full of the [i]ndebtedness." Thereafter, in 1995, Shawmut assigned its rights, if any, in the deficiency judgment, to Cadle Company (plaintiff), who, in 1996, became the substitute plaintiff in this action. See footnote 3 of this opinion.

In 2007, the plaintiff instituted proceedings to compel Hallahan to pay the full amount of the deficiency judgment. As a result, pursuant to Practice Book § 6-5,[5] Hallahan filed a motion to determine that the deficiency judgment had been fully, or in the alternative, partially satisfied by the agreement. In his motion, Hallahan asserted that the agreement completely extinguished the deficiency judgment and, consequently, that it released Hallahan of liability for that debt. Thereafter, Ermler requested an evidentiary hearing to establish

[4] It is undisputed that Brophy was not liable on the loan and was not a debtor on the deficiency judgment. Although Brophy is a party in the settlement agreement, he is not a party in this appeal.

[5] Practice Book § 6-5 provides: "When the judgment is satisfied in a civil action, the party recovering the judgment shall file written notice thereof with the clerk, who shall endorse judgment satisfied on the judgment file, if there is one, and make a similar notation on the file and docket sheet, giving the name of the party and the date. An execution returned fully satisfied shall be deemed a satisfaction of judgment and the notice required in this section shall not be filed. The judicial authority may, upon motion, make a determination that the judgment has been satisfied."

that the agreement had fully satisfied the deficiency judgment and that it was intended to satisfy the judgment as to both of the defendants. The trial court denied Hallahan's motion and Ermler's request for an evidentiary hearing, determining that "the agreement makes no mention of the deficiency judgment in this case or of [Hallahan], and, even assuming that the agreement was intended to satisfy Ermler's obligations with respect to the deficiency judgment, a partial payment of a judgment by one joint debtor does not as a matter of law relieve the remaining joint debtors of their obligations to pay the balance of the judgment." These appeals followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the defendants assert that the trial court improperly concluded that the agreement did not satisfy the deficiency judgment. Specifically, the defendants claim that the agreement unambiguously includes the deficiency judgment in its definition of " '[i]ndebtedness,' " and, therefore, that the payment made pursuant to the agreement satisfied the deficiency judgment. In response, the plaintiff asserts that the trial court properly determined that the agreement did not release Hallahan from liability for the deficiency judgment. Specifically, the plaintiff claims that the language of the agreement only released Ermler from his liability for the deficiency judgment and did not fully satisfy the judgment. We agree with the defendants.

As a preliminary matter, we set forth the applicable standard of review and guiding principles. The resolution of this appeal requires us to interpret the language of a contract, in this case the agreement. "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quo-

tation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 355, 999 A.2d 713 (2010).

"[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the [writing]. . . . Where the language of the [writing] is clear and unambiguous, the [writing] is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a [written instrument] must emanate from the language used in the [writing] rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, 294 Conn. 611, 623, 987 A.2d 1009 (2010). "If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Remillard* v. *Remillard*, supra, 297 Conn. 355. "[A] presumption that the language used is definitive arises when . . . the contract at issue is between sophisticated parties and is commercial in nature." *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670, 791 A.2d 546 (2002).

In the present case, the agreement provided in relevant part that "[c]ontemporaneously herewith, [the defendants] shall pay to [Shawmut $42,150] as payment in full of the [i]ndebtedness. . . ." On appeal, the parties dispute whether the agreement was intended to include the entire deficiency judgment as part of the

indebtedness that was satisfied by the payment made pursuant to the agreement. Accordingly, to determine our standard of review, we first must ascertain whether the term indebtedness, as used in the agreement, is clear and unambiguous. This is a question of law over which our review is plenary. See, e.g., *Isham* v. *Isham*, 292 Conn. 170, 181, 972 A.2d 228 (2009) ("[c]ontract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion" [internal quotation marks omitted]). In contrast, an agreement is ambiguous when its language "is reasonably susceptible of more than one interpretation." Id. Nevertheless, "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Internal quotation marks omitted.) Id.

In the present case, the agreement itself defines the term indebtedness. Specifically, in its first recital, the agreement provides in relevant part: "Whereas, Brophy and Ermler (hereinafter referred to collectively as the '[d]ebtors' and each individually as '[d]ebtor') are indebted to [Shawmut] by virtue of loans in the aggregate principal amount of [$277,500], plus interest accrued and accruing thereon and all costs and expenses of collection (including, without limitation, attorneys' fees), as evidenced by promissory note(s) in favor of [Shawmut] (the '[i]ndebtedness') . . . ."

While these appeals were pending, the parties entered into a stipulation in an effort to narrow the issues on appeal. As part of the stipulation, the parties agreed that "[t]he [agreement] dated as of March 19, 1993, between [Brophy and Ermler] as debtors and [Shawmut] as creditor . . . applies to the December 16, 1991 deficiency judgment . . . rendered in the foreclosure case entitled *Connecticut National Bank* v. *Rehab Associates*, judicial district of Middlesex, Docket No. MMX-

CV-91-0060522-S [December 16, 1991]. The [d]eficiency [j]udgment resulted from one of the loans referred to in the [agreement] (page [one], first recital)." Accordingly, it is undisputed that the deficiency judgment is included in the loans that Brophy or Ermler owed to Shawmut in the aggregate principal amount of $277,500, and is, therefore, included in the definition of indebtedness in the agreement.

In addition, the documents that were attached to the agreement as exhibits and incorporated into the agreement specifically include the loan from Connecticut National Bank among Ermler's debts, and list Hallahan as a codebtor. The fact that the debt between Connecticut National Bank and Ermler was explicitly listed in the loan documents is strong evidence that both Ermler and Shawmut were aware of that debt at the time they signed the agreement.

The plaintiff, however, asserts that the definition of indebtedness in the agreement is ambiguous because it does not include Hallahan's liability on the deficiency judgment. We disagree. As we previously have explained herein, the parties clearly and unambiguously defined indebtedness to include loans in the aggregate principal amount of $277,500, which included the deficiency judgment. The parties did not include any restrictive language in the definition of indebtedness so as to exclude portions of those loans for which other debtors were liable. We reject the plaintiff's claim that only Ermler's portion of the deficiency judgment was included in the indebtedness under the agreement. Indeed, it is important to note that Ermler and Hallahan were jointly and severally liable for the entirety of the deficiency judgment. Ermler was, therefore, liable for the entirety of the deficiency judgment. We conclude, therefore, that the entirety of the deficiency judgment was included within the definition of indebtedness in the agreement.

Accordingly, we conclude that the definition of indebtedness in the agreement clearly and unambiguously includes the deficiency judgment. Having concluded that the term indebtedness is clear and unambiguous, we must next determine whether the parties intended for the payment made under the agreement to fully satisfy the deficiency judgment, which is a question of law over which we exercise plenary review. See *19 Perry Street, LLC* v. *Unionville Water Co.*, supra, 294 Conn. 622–23 ("[w]here a party's intent is expressed clearly and unambiguously in writing . . . the determination of what the parties intended is a question of law [over which our review is plenary]" [internal quotation marks omitted]).

The defendants assert that the language of the agreement clearly and unambiguously evidences the parties' intent that the payment made under the agreement would fully satisfy the deficiency judgment. Specifically, the defendants claim that because the agreement refers to satisfaction of the indebtedness and does not contain any language reserving Shawmut's rights against any other obligor, the agreement must be construed so as to fully satisfy the deficiency judgment. In response, the plaintiff asserts that the settlement agreement cannot be construed so as to provide that the deficiency judgment is satisfied. We agree with the defendants.

We keep in mind that, "in construing contracts, we give effect to all the language included therein, as the law of contract interpretation . . . militates against interpreting a contract in a way that renders a provision superfluous. . . . Therefore, [w]hen interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Citations omitted; internal

quotation marks omitted.) *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 391, 985 A.2d 319 (2009).

The parties stipulated that "Ermler and Brophy were the only named releasees in the [agreement]. The [agreement] fully released Ermler and Brophy from any liability on the [d]eficiency [j]udgment. Hallahan's claim that he has no liability on the [d]eficiency [j]udgment does not involve any contention that he was a named releasee in the [agreement]." We must, therefore, decide whether Hallahan's liability for the deficiency judgment survived the agreement or whether the payment made under the agreement fully satisfied the deficiency judgment.

In the present case, the agreement provides in relevant part that, "[w]hereas, [Shawmut] has agreed to accept a cash payment equal to less than the principal amount due and covenant not to take action to collect the balance of the [i]ndebtedness subject to the terms of this [a]greement . . . ." The agreement further provides that "[c]ontemporaneously herewith, [the defendants] shall pay to [Shawmut $42,150][6] as payment in full of the [i]ndebtedness."

Recognizing that Shawmut is a sophisticated commercial entity, we conclude that if Shawmut had intended to exclude Hallahan's liability for the deficiency judgment from the debts satisfied by payment under the agreement, it could have done so. See, e.g., *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, supra, 259 Conn. 670 ("a presumption that the language used is definitive arises when . . . the contract at issue is between sophisticated parties and is commercial in nature"). Indeed, an examination of the contract as a whole reveals that where the parties intended to include limiting language, they did so. For instance, in recital

---

[6] As part of the stipulation, the parties agreed that there was a scrivener's error and the correct amount paid was $46,786.

four of the agreement, the other creditors involved in the agreement agreed to accept various amounts "as payment in full for [their] claims against [Ermler and Brophy] . . . ." To the contrary, the language in the provisions involved in the present appeal do not limit the payment to claims against Ermler and Brophy, but instead provide that the payment received is "payment in full of the [i]ndebtedness," and Shawmut "covenant[ed] not to take action to collect the balance of the [i]ndebtedness subject to the terms of this [a]greement . . . ." We conclude that Shawmut's failure to include such limiting language in these provisions is strong evidence that the parties intended the payment made under the agreement to fully satisfy the deficiency judgment. On the basis of the foregoing, we conclude that the trial court improperly failed to grant Hallahan's motion to determine that the deficiency judgment had been satisfied.[7]

The judgment is reversed and the case is remanded to the trial court with direction to render judgment for Hallahan.

In this opinion the other justices concurred.

---

[7] The defendants also raise several other claims in these appeals, namely, whether the trial court improperly denied them an evidentiary hearing, whether Shawmut improperly impaired Hallahan's right to equitable contribution in the deficiency judgment, and whether Hallahan's liability for the deficiency judgment should be capped at his contributive one-half share. Because we conclude that the trial court improperly failed to grant Hallahan's motion to determine that the deficiency judgment had been satisfied, we need not reach these other claims.