******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MADELINE G. FAZIO *v.* MICHAEL A. FAZIO
(AC 37241)

DiPentima, C. J., and Prescott and Harper, Js.

*Argued October 19, 2015—officially released January 5, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. Stanley Novack, judge trial
referee [dissolution judgment]; Emons, J. [motion for
modification; motion for contempt].)

*Thomas C. C. Sargent*, for the appellant (plaintiff).

*Kevin F. Collins*, for the appellee (defendant).

*Opinion*

PRESCOTT, J. This appeal requires us to interpret a separation agreement incorporated into a dissolution judgment to determine whether the parties intended by their agreement that, in the event of cohabitation, alimony must be immediately and irrevocably terminated, or whether the parties intended that the court be permitted to exercise the equitable and remedial powers set forth in General Statutes § 46b-86 (b) to consider suspending or modifying alimony instead of irrevocably terminating it. We conclude, contrary to the decision of the trial court, that the agreement at issue in this case is ambiguous and that the court should have considered extrinsic evidence of, and made additional factual findings regarding, the parties' intent before it concluded that the agreement required immediate termination of alimony. Accordingly, we reverse the judgment of the court and remand this case for further proceedings.

The plaintiff, Madeline G. Fazio, appeals from the judgment rendered by the trial court in favor of the defendant, Michael A. Fazio, on his postdissolution motion to modify or terminate his obligation to pay unallocated alimony and child support to the plaintiff pursuant to the parties' separation agreement incorporated as part of the judgment of dissolution. The plaintiff claims that the court improperly interpreted article 3.2 (a) of the separation agreement to require immediate termination of the unallocated alimony and child support in the event that the plaintiff cohabited with another person as defined by § 46b-86 (b), rather than to allow the court to exercise its remedial powers pursuant to § 46b-86 (b).

The record reveals the following relevant facts and procedural history. The parties were married on May 7, 1988, and they subsequently had three children. On February 9, 2005, the plaintiff filed a marital dissolution action on the ground that the marriage had broken down irretrievably with no hope of reconciliation. On May 19, 2006, the court rendered judgment dissolving the parties' marriage. The judgment incorporated by reference a separation agreement that the parties had signed on May 18, 2006, and that the court found to be "fair and equitable."

Article 3.2 (a) of the separation agreement provides in relevant part: "Commencing on June 1, 2006, the [defendant] shall pay to the [plaintiff] unallocated alimony and child support in cash until the death of either party, the remarriage or cohabitation of the [plaintiff] pursuant to Section 46b-86 (b) of the . . . General Statutes, or May 31, 2013, whichever event shall first occur . . . ." Article 3.2 (b) provides in relevant part: "Commencing on June 1, 2013, the [defendant] shall pay to the [plaintiff] . . . unallocated alimony and child support

in cash until the death of either party, the remarriage of the [plaintiff], or November 30, 2019 . . . ." Additionally, article 3.6 of the separation agreement provides: "The [defendant's] obligation to pay alimony and support to the [plaintiff] pursuant to Article 3.2 shall be non-modifiable by either party as to the amount and duration, except (1) that the [defendant] shall have the right to seek a modification of [the] amount of alimony and support based on the [plaintiff's] earnings only in the event the [plaintiff] earns in excess of $100,000.00 gross per year and (2) the [plaintiff] shall have the right to seek a modification of the amount of alimony and support in the event the [defendant] is unemployed for a period of six months. The [plaintiff's] right to seek child support shall not be precluded if the [defendant] is unemployed."

On July 5, 2012, the defendant filed a postjudgment motion to modify or terminate unallocated alimony and child support pursuant to § 46b-86 (b) on the ground that the plaintiff was cohabitating with another person. Section 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a spouse, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other spouse, the Superior Court may, in its discretion and upon notice and hearing, modify such judgment and *suspend, reduce or terminate the payment of periodic alimony* upon a showing that the party receiving the periodic alimony *is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party.* In the event that a final judgment incorporates a provision of an agreement in which the parties agree to circumstances, other than as provided in this subsection, under which alimony will be modified, including suspension, reduction, or termination of alimony, the court shall enforce the provision of such agreement and enter orders in accordance therewith." (Emphasis added.)

The plaintiff subsequently filed a motion for contempt on the ground that the defendant had failed to pay unallocated alimony and child support as provided for in the separation agreement. After a hearing on the motions and the submission of posthearing briefs, the court denied the plaintiff's motion for contempt, and granted the defendant's motion to modify or terminate unallocated alimony and child support. The court found that the plaintiff had been living with another person, Adam Monges, from December, 2011 to July, 2012, and that this living arrangement had changed the plaintiff's circumstances as to alter her financial needs because Monges had paid her between $300 and $350 per week. On the basis of those findings, the court concluded that

the plaintiff was cohabitating[1] with another person as defined by § 46b-86 (b).[2]

The court further concluded that the separation agreement required the immediate termination of alimony in the event of the plaintiff's cohabitation. The court determined that the plain language of the separation agreement was clear and "unequivocally intended to provide that cohabitation . . . would result in self-effecting termination of alimony." The court interpreted the phrase "until the . . . cohabitation of the [plaintiff] pursuant to Section 46-86b of the . . . General Statutes" to include only the definitional aspects of § 46b-86 (b) regarding cohabitation. According to the court, "[t]he parties could have chosen to render cohabitation an event resulting in modification or they could have incorporated the remedies as provided in . . . § 46b-86 (b), but they chose to do neither."

In attempting to ascertain the parties' intent, the court relied heavily on this court's decision in *Nation-Bailey* v. *Bailey*, 144 Conn. App. 319, 324, 74 A.3d 433 (2013), aff'd, 316 Conn. 182, 112 A.3d 144 (2015), which was decided almost one year after the defendant had moved to modify or terminate alimony in this case, but before the court had rendered its decision on his motion. In *Nation-Bailey*, this court was asked to interpret a provision within a separation agreement with language quite similar to the provision at issue in this case: "Unallocated alimony and child support shall be paid *until* the death of either party, the [plaintiff's] remarriage or cohabitation *as defined by* Conn. General Statutes § 46b-86 (b) or until August 1, 2011." (Emphasis added.) Id., 321. In that agreement, we interpreted "until" as a word of limitation equivalent to the word "termination" and, in the event of cohabitation, requiring immediate termination of unallocated alimony and child support. Id., 327–28. We also concluded that the parties' use of the phrase "as defined by Conn. General Statutes § 46b-86 (b)" should be construed to import only the definitional aspects of that statute. Id., 324–25 n.2. This court was unwilling to construe that phrase as reflective of a broader intent to permit a trial court to exercise the remedial powers contained in that provision.[3] Id.

Tracking the reasoning of our decision in *Nation-Bailey*, the trial court in the present case concluded that the parties' similar use of the word "until" in article 3.2 (a) clearly and unambiguously expressed the parties' intent that alimony would be immediately terminated in the event of cohabitation. The court did not, however, discuss the fact that the parties in this case had used the phrase "pursuant to Section 46b-86 (b) of the . . . General Statutes," which differed from the "as defined by" language in our decision in *Nation-Bailey*. Because the court found that the language of article 3.2 (a) was clear and required termination in the event of cohabitation, as defined by § 46b-86 (b), it stated that it had

"but one option—to enforce the plain terms of the Agreement [which required immediate termination of alimony]." This appeal followed.

The plaintiff's sole claim on appeal is that the court improperly interpreted article 3.2 (a) of the separation agreement to require termination in the event that the plaintiff cohabited with another person, rather than to allow the court to exercise its remedial powers pursuant to § 46b-86 (b) and consider other remedies such as the temporary suspension or modification of alimony. The plaintiff argues that article 3.2 (a) of the separation agreement incorporates § 46b-86 (b) in its entirety, affording the court the full panoply of the statute's remedial powers. In other words, if the remedial powers of § 46b-86 (b) are incorporated into the judgment of dissolution, as the plaintiff contends is the case here, the court has the discretion to modify, suspend, reduce, or terminate the alimony obligation in the event of the alimony recipient's cohabitation.

The defendant argues that the court correctly interpreted article 3.2 (a) to require immediate termination in the event of cohabitation, because "until" is a term of limitation connoting termination and § 46b-86 (b) was referenced in the provision only for definitional purposes. We note that although the defendant makes this argument on appeal, his argument is belied by the language he employed in his motion to the court, which sought *modification* or termination of the unallocated alimony and child support. On three occasions in his roughly page and a half motion, the defendant implored the court to utilize its remedial powers pursuant to § 46b-86 (b) "to suspend, reduce, or terminate the unallocated alimony . . . ."

We conclude that the court improperly interpreted article 3.2 (a) of the separation agreement as clearly and unambiguously requiring termination of unallocated alimony and child support in the event of the plaintiff's cohabitation because we determine that the language used in article 3.2 (a) is ambiguous. Accordingly, the court should have determined the parties' intent in light of all the available extrinsic evidence and the circumstances surrounding the formation of the separation agreement in determining whether article 3.2 (a) incorporates the remedial aspects of § 46b-86 (b).

We begin our analysis by setting forth the applicable standard of review and principles of law. "It is well established that a separation agreement that has been incorporated into a dissolution decree and its resulting judgment must be regarded as a contract and construed in accordance with the general principles governing contracts. . . . When construing a contract, we seek to determine the intent of the parties from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascer-

tained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract. . . . Extrinsic evidence is always admissible, however, to explain an ambiguity appearing in the instrument." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Isham* v. *Isham*, 292 Conn. 170, 180–81, 972 A.2d 228 (2009).

"If a contract is unambiguous within its four corners, the determination of what the parties intended by their contractual commitments is a question of law [and our review is plenary]. . . . When the language of a contract is ambiguous, [however] the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 355, 999 A.2d 713 (2010).

Accordingly, "[t]he threshold determination in the construction of a separation agreement . . . is whether, examining the relevant provision in light of the context of the situation, the provision at issue is clear and unambiguous, which is a question of law over which our review is plenary. . . . Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion . . . . The proper inquiry focuses on whether the agreement on its face is reasonably susceptible of more than one interpretation. . . . It must be noted, however, that the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ." (Citations omitted; internal quotation marks omitted.) *Isham* v. *Isham*, supra, 292 Conn. 181–82.

"In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 383–84, 107 A.3d 920 (2015).

Applying the foregoing principles to the present matter, we conclude that the language used in article 3.2

(a) of the separation agreement is ambiguous. At the outset, it is important to note that, after the court issued its memorandum of decision, our Supreme Court affirmed this court's decision in *Nation-Bailey. Nation-Bailey* v. *Bailey*, 316 Conn. 182, 112 A.3d 144 (2015). In so doing, the Supreme Court agreed with our court that the word "until," standing alone, indicates termination, and that "as defined by" incorporates only the definitional aspects of § 46b-86 (b). Id., 193–95, 197–98.

As part of its analysis of whether the parties in *Nation-Bailey* had intended to incorporate the remedial aspects of § 46b-86 (b) into the agreement through their use of the phrase "as defined by," the Supreme Court reasoned that "had the parties intended to import the remedial aspect of § 46b-86 (b), in addition to its definitional portion, they could have used more expansive reference terms such as 'in accordance with' or 'pursuant to.' " Id., 197. Accordingly, presaging this case, our Supreme Court has indicated, albeit in dicta, that the use of the phrase "pursuant to" in a virtually identical provision of a separation agreement might be reflective of an intent to broadly incorporate all aspects of § 46b-86 (b), not just the definitional language. Conversely, if the parties had intended to reference § 46b-86 (b) solely for definitional purposes, they could have used the phrase "as defined by." Thus, our Supreme Court has suggested that the use of "pursuant to" may show an intent by the parties to incorporate more than the definition of "cohabitation" from § 46b-86 (b).

In considering whether "pursuant to" incorporates the remedial aspects of § 46b-86 (b), we turn to the dictionary definition of the phrase. "We often consult dictionaries in interpreting contracts, including separation agreements, to determine whether the ordinary meanings of the words used therein are plain and unambiguous, or conversely, have varying definitions in common parlance." (Internal quotation marks omitted.) Id., 193. Black's Law Dictionary (9th Ed. 2009) defines "pursuant to" as "[i]n compliance with; in accordance with; under . . . [a]s authorized by . . . [i]n carrying out . . . ." Ballentine's Law Dictionary (3d Ed. 1969) defines "pursuant to" as "[a]cting or done in consequence or in prosecution (of anything); hence, agreeable; conformable; following; according." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003) defines "pursuant to" as "in carrying out: in conformity with: according to." See id. (defining "according to" as "1: in conformity with 2: as stated or attested by 3: depending on" and defining "conformity" as "action in accordance with some specified standard or authority"). Accordingly, the use of the phrase "pursuant to," standing alone, suggests that the language modified by that phrase is intended to conform to and comply with the statute in its entirety. In the present case, "pursuant to" modifies "cohabitation," and, therefore, if viewed in isolation, that phrase arguably demonstrates an

intent by the parties that the court may exercise its equitable remedial powers in the event of the plaintiff's cohabitation.

The meaning of "pursuant to," however, is muddied by its context in article 3.2 (a). Similar to the language in *Nation-Bailey*, "the agreement treats cohabitation as an event akin to death or remarriage, both of which are events that ordinarily terminate a periodic alimony obligation *absent an express provision to the contrary* in the court's decree or incorporated settlement agreement." (Emphasis added.) *Nation-Bailey* v. *Bailey*, supra, 316 Conn. 195. On the one hand, "pursuant to" reasonably could be interpreted to be "an express provision to the contrary," but, on the other hand, the grammatical arrangement of the provision as a whole makes it unclear.

According to article 3.2 (a), the defendant was required to pay unallocated alimony and child support "until the death of either party, the remarriage or cohabitation of the [plaintiff] pursuant to Section 46b-86 (b) . . . or May 31, 2013 . . . ." "[R]emarriage" and "cohabitation" are listed together, not as two separate events, but as equals. There is a default presumption that an alimony obligation terminates upon the alimony recipient's remarriage in instances where such a result would not conflict with the terms of the dissolution decree. See *Williams* v. *Williams*, 276 Conn. 491, 499–500, 886 A.2d 817 (2005). In the present case, the terms of the separation agreement support the default presumption that alimony terminates upon the alimony recipient's remarriage in light of the use of the word "until." Accordingly, it could reasonably be inferred from the linguistic proximity between "cohabitation" and "remarriage," that alimony must terminate in the event of remarriage or cohabitation, especially because the two other circumstances triggering immediate termination, death and a definitive date, flank "cohabitation" on either side.

Furthermore, a "contract must be viewed in its entirety, with each provision read in light of the other provisions . . . ." (Internal quotation marks omitted.) *Parisi* v. *Parisi*, supra, 315 Conn. 384. Article 3.6 of the separation agreement directly modifies article 3.2, stating that article 3.2 is "non-modifiable by either party as to the amount and duration . . . ." Article 3.6 clearly details the two limited circumstances, neither of which is relevant here, under which the parties may seek a modification of the amount of unallocated alimony and child support that the defendant was obligated to pay to the plaintiff pursuant to article 3.2 (a). In neither of the exceptions to the nonmodification provision is the defendant expressly allowed to seek a modification in the amount of unallocated alimony and child support on the basis of the plaintiff's cohabitation with another person. On the basis of article 3.6, modification of the

amount and duration of unallocated alimony and child support is not permitted in the event of the plaintiff's cohabitation with another person, implying that termination is the only remedy available. Thus, although the meaning of "pursuant to," by itself is clear, article 3.6 further obscures the clear intent of article 3.2 (a).

Article 3.2 (a) must also be read in light of article 3.2 (b), an alimony provision in the separation agreement that makes no mention of cohabitation. Pursuant to article 3.2 (b), between June 1, 2013 and November 30, 2019, the defendant is obligated to pay unallocated alimony and child support until either parties' death, the plaintiff's remarriage, or November 30, 2019. Cohabitation is not listed as one of the events that would affect the defendant's obligation to pay alimony. This presents two issues, both of which add to the ambiguity of the language used in article 3.2 (a). First, because the defendant appears to be obligated to pay alimony even if the plaintiff cohabitates during this time period, it may be argued that the defendant's obligation to pay unallocated alimony and child support exists during this time even if it was terminated prior to June 1, 2013, on account of the plaintiff's cohabitation. Although it seems unlikely that the parties would have intended or contemplated this scenario, it is arguably possible in light of the absence of cohabitation language in article 3.2 (b).

Second, if the plaintiff had first cohabitated with Monges during the time frame covered by article 3.2 (b) instead of when she did, termination of unallocated alimony and child support would not be required, and possibly not even permitted. Our Supreme Court has allowed a party obligated to pay alimony to request, pursuant to § 46b-86 (b), that alimony be suspended, reduced, or terminated in the event of cohabitation in cases where a dissolution judgment requires payment of alimony, but contains no provision regarding the effect of cohabitation on the obligation to pay alimony. See *Kaplan* v. *Kaplan*, 186 Conn. 387, 388–89, 441 A.2d 629 (1982) (allowing plaintiff to seek modification of alimony, pursuant to § 46b-86 [b], because plaintiff was ordered to pay alimony but dissolution judgment contained no provision regarding effect of cohabitation on obligation to pay alimony). This court, however, has held that, because the provisions in an incorporated separation agreement prevail over § 46b-86 (b), if the incorporated separation agreement limits modification of the amount or duration of alimony, and does not make an exception for modification in the event of cohabitation, the court does not have access to its remedial powers pursuant to § 46b-86 (b). See *Wichman* v. *Wichman*, 49 Conn. App. 529, 533, 714 A.2d 1274, ("[w]e find nothing in the legislative history [of § 46b-86 (b)] cited by the defendant, however, that would permit the trial court to modify a judgment based on cohabitation when the judgment itself precludes modification for

any reason other than remarriage or death"), cert. denied, 247 Conn. 910, 719 A.2d 906 (1998).

In the present case, article 3.6 limits modification of the amount and duration of alimony to two specific circumstances, which do not include cohabitation, as discussed previously. Thus, if the plaintiff had cohabitated between June 1, 2013 and November 20, 2019, not only would termination not be immediately required, but the defendant arguably would have been unable to seek a modification of the amount or duration of unallocated alimony and child support. This possible result adds to the ambiguity of article 3.2 (a) because it seems nonsensical to require termination during one time frame and then prohibit any modification, including termination, during another time frame.

In light of our Supreme Court's dicta in *Nation-Bailey*, the language of article 3.2 (a), and the contract as a whole, the phrase "until the . . . cohabitation of the [plaintiff] pursuant to Section 46b-86 (b)," does not convey a definite and precise intent. Both parties' interpretations of article 3.2 (a) are plausible. We determine, therefore, that the trial court improperly concluded that the parties' intent was clear and unambiguous.

On the basis of this ambiguity, the court was required to make a finding of fact as to the parties' intent regarding whether article 3.2 (a) of the separation agreement incorporated the remedial aspects of § 46b-86 (b). See *Parisi* v. *Parisi*, supra, 315 Conn. 383, 385–86 (stating that if language of contract is ambiguous, parties' intent is question of fact that trial court is required to consider and resolve after considering extrinsic evidence and surrounding circumstances). Because the court made no such factual finding after considering extrinsic evidence, we conclude that it improperly interpreted article 3.2 (a) of the separation agreement. This court cannot find facts in the first instance. See id., 385–86 (concluding that trial court improperly found separation agreement to be unambiguous, and, thus, case had to be remanded for court to make factual finding as to parties' intent, because appellate court cannot find facts in first instance). Accordingly, we remand this case to the trial court to determine the intent of the parties after consideration of all the available extrinsic evidence and the circumstances surrounding the entering of the agreement.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] We note that although § 46b-86 (b) does not use the term "cohabitation," that statute has come to be known as the " 'cohabitation statute.' " *D'Ascanio* v. *D'Ascanio*, 237 Conn. 481, 485, 678 A.2d 469 (1996). The phrase "living with another person" is used, rather than "cohabitation," because the legislature wanted to employ broader language to ensure that the circumstances for which the law was passed were encompassed in the definition, specifically instances where the alimony recipient lived with another person without marrying in order to prevent the loss of alimony support. See *Kaplan* v.

*Kaplan*, 185 Conn. 42, 45–46, 45 n.3, 440 A.2d 252 (1981). Therefore, if cohabitation is defined by § 46b-86 (b) and not by some provision within the agreement itself, a finding of cohabitation requires that (1) the alimony recipient was living with another person and (2) the living arrangement caused a change of circumstances so as to alter the financial needs of the alimony recipient. See *D'Ascanio* v. *D'Ascanio*, supra, 486

[2] The plaintiff does not challenge the court's determination that she cohabitated as defined by § 46b-86 (b).

[3] Judge Borden dissented from the decision of the majority. *Nation-Bailey* v. *Bailey*, supra, 144 Conn. App. 330–37. He concluded, among other things, that the majority's interpretation of the language in the agreement "puts more weight on the word 'until' than it can bear. The use of that word in the judgment is equally consistent with the trial court's ruling . . . because by suspending the alimony, rather than terminating it as sought by the defendant, the word could carry a similar meaning: for example, the alimony continues 'until' cohabitation under the statute, which carries the court's range of equitable powers." Id, 336. He also construed the phrase "as defined by" to indicate the parties' intent to incorporate all aspects of § 46b-86 (b) into the agreement, not just the statute's definitional aspects. Id., 331.

———————————————