******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD P. GABRIEL *v.* DIANA K. GABRIEL
(AC 36348)

Beach, Mullins and Bishop, Js.

*Argued May 21—officially released September 15, 2015*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Hon. Stanley Novack, judge trial

referee [dissolution judgment]; S. Richards, J. [motion for modification; motion for contempt].)

*Norman A. Roberts II*, with whom, on the brief, was *Anthony L. Cenatiempo*, for the appellant (defendant).

*Joseph T. O'Conner*, for the appellee (plaintiff).

*Opinion*

MULLINS, J. The defendant, Diana K. Gabriel, appeals from the judgment of the trial court modifying the unallocated alimony and support order of the dissolution court, and denying her motion for contempt filed against the plaintiff, Richard P. Gabriel. On appeal, the defendant claims that the court improperly modified her alimony award and denied her motion for contempt. We reverse the judgment of the trial court.

The following facts inform our review. The plaintiff and the defendant were married on July 1, 1995, and three children were born of the marriage. On April 7, 2011, the court dissolved the parties' marriage. The court incorporated the parties' separation agreement into its judgment. The parties' separation agreement also incorporated a July 21, 2010 parenting plan, in which the parties agreed to share joint physical and legal custody of the children, with primary physical custody also shared. The agreement also provided for unallocated alimony and support from January 1, 2011, to December 31, 2015. The alimony was nonmodifiable by the defendant as to amount and duration. The plaintiff, however, had the right to seek a modification of alimony on the basis of a substantial change in circumstances, so long as those circumstances were not based on the defendant's cohabitation or an increase in the defendant's earnings up to $100,000.

On May 1, 2012, the parties entered into a postjudgment parenting plan because the defendant was relocating to California, and the plaintiff did not want the defendant to take the children with her. Pursuant to this plan, which the court accepted, both parties continued to share "joint legal and physical custody of the minor children," but the children primarily would reside with the plaintiff in Connecticut. The parenting plan also granted the defendant liberal visitation, including either the children's February or April vacation and a substantial portion of their summer vacation. The parenting plan was contingent on the defendant moving to California and was void if she stayed in Connecticut. The parenting plan did not address the issue of child support, and the court did not raise that issue during the hearing on the parenting plan.

On June 28, 2012, the plaintiff filed a motion for modification of child support, asserting that "[t]he financial circumstances of the parties have changed as a result of the defendant's relocation. [The defendant] no longer has primary residential custody of the children and is no longer primarily responsible for their financial needs. The [plaintiff] now has custody and primary responsibility for all three minor children." On October 5, 2012, without permission from the court, the plaintiff unilaterally decreased his payments to the defendant from $54,666 per month to $20,000 per

month. In response, the defendant filed a motion for contempt, alleging that the plaintiff improperly had engaged in self-help by reducing his unallocated support payments in violation of the existing orders of the court.

On November 5, 2013, the court granted the plaintiff's postjudgment motion for modification of child support, finding that the parties had stipulated that there had been a substantial change in circumstances.[1] The court also found that the defendant's financial needs had been reduced significantly by her move to California and her cohabitation with a man who was paying a portion of her household expenses. Accordingly, the court reduced the plaintiff's alimony payments to $20,000 per month. On the basis of the plaintiff having assumed primary physical custody of the children, the court, citing General Statutes § 46b-224,[2] also found that the plaintiff was not in wilful contempt for unilaterally reducing his unallocated payments to the defendant. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly modified the unallocated award without first determining the child support portion of the original award. We conclude that there was error.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citations omitted; internal quotation marks omitted.) *Nation-Bailey* v. *Bailey*, 144 Conn. App. 319, 330, 74 A.3d 433 (2013), aff'd, 316 Conn. 182, 112 A.3d 144 (2015).

Additionally, "[i]t is well established that a separation agreement, incorporated by reference into a judgment of dissolution, is a contract between the separating parties. . . . Accordingly, our review of a trial court's interpretation of a separation agreement is guided by the general principles governing the construction of contracts. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *Saga-lyn* v. *Pederson*, 140 Conn. App. 792, 795, 60 A.3d 367,

cert. denied, 308 Conn. 930, 64 A.3d 119 (2013).

In this case, the parties entered into a separation agreement that was incorporated into the court's judgment dissolving their marriage. Article II, § 2.1 of the agreement provided in relevant part:

"2.1 Commencing January 1, 2011, the [plaintiff] shall pay, during his lifetime, to the [defendant], until her death or remarriage or December 31, 2013, whichever shall first occur, for her support monthly unallocated alimony and support as follows:

"The [plaintiff's] monthly alimony obligation shall be 1/12th of the following amounts

"1) 50 [percent] of earned annual cash income up to $400,000 ($400,000 x .50 = $200,000/12 = $16,666.66 max) plus

2) 45 [percent] of earned annual cash income between $400,001 and $800,000 ($400,000 x 45 [percent] = $180,000/12 = $15,000 max) plus

3) 40 [percent] of earned annual cash income between $800,000 and $1,500,000 ($700,000 x .40 = $280,000/12 = $23,333 max).

"The maximum monthly alimony obligation shall be $54,999, or $660,000 per year. The [defendant] shall have no claim to the [plaintiff's] earnings in excess of $1,500,000.

"Commencing January 1, 2014, the [plaintiff] shall pay, during his lifetime, to the [defendant], until her death or remarriage or December 31, 2015, whichever shall first occur, for her support monthly unallocated alimony and support as follows:

"The [plaintiff's] monthly unallocated alimony and support obligation shall be 1/12th of the following amounts

"1) 50 [percent] of earned annual cash income up to $400,000 ($400,000 x .50 = $200,000/12 = $16,666.66 max) plus

2) 45 [percent] of earned annual cash income between $400,001 and $800,000 ($400,000 x 45 [percent] = $180,000/12 = $15,000 max) plus

3) 40 [percent] of earned annual cash income between $800,000 and $1,250,000 ($450,000 x .40 = $180,000/12 = $15,000 max).

"The maximum monthly unallocated alimony and support obligation shall be $46,666.66 monthly, or $560,000 per year. The [defendant] shall have no claim to the [plaintiff's] earnings in excess of $1,250,000 . . . .

"The amount of alimony shall be non-modifiable as to both amount and duration by the [defendant], for any reason.

"The [plaintiff] retains his right to seek a modification of alimony based upon a substantial change of circumstances. The foregoing notwithstanding, for so long as he is paying alimony in accordance with the above percentages, the [plaintiff] waives the right to seek to modify the [defendant's] alimony based upon her cohabitation. He further waives the right to seek a modification of this alimony obligation based solely upon the [defendant's] earnings, so long as her earnings do not exceed $100,000 per annum."[3]

Accordingly, the terms of the agreement, as it relates to the unallocated alimony and support payments, are unambiguous. The agreement clearly states that the unallocated alimony and support payments are "for her support" and are nonmodifiable by the defendant as to both amount and duration, but are modifiable by the plaintiff upon a substantial change in circumstances, *not including the defendant's cohabitation or her earnings up to $100,000*. Indeed, the plaintiff concedes that the agreement clearly prohibits him from moving to modify the agreement on the basis of the defendant's cohabitation. He argues, however, that the court was free to consider the defendant's cohabitation in rendering its new orders. We disagree.

The plaintiff in this case filed a postjudgment motion for modification, requesting "an order from the court for a *modification of his child support payments* due to a substantial change of circumstances." (Emphasis added.) The plaintiff claimed that the change in the children's residence affected the parties' financial circumstances. The court, after taking into consideration that the defendant now was cohabitating with a man who was paying a substantial portion of her household expenses, modified the plaintiff's alimony obligation to the $20,000 monthly amount to which the plaintiff unilaterally had reduced it.[4] The court made no findings on the record, however, regarding child support. The court also never indicated that it had broken down the components of the original order before modifying the award.[5]

Our Supreme Court has "interpreted [General Statutes § 46b-86 (a)] generally to [provide] the trial court with continuing jurisdiction to modify support orders after the date of a final judgment of dissolution. . . . It permits the court to modify alimony and child support orders if the circumstances demonstrate that: (1) either of the parties' circumstances have substantially changed; or (2) the final order of child support substantially deviates from the child support guidelines. The statute, however, expressly stipulates that the court may exercise this authority [u]nless and to the extent that the decree precludes modification . . . . Thus, by its terms, § 46b-86 (a) clearly contemplates that, in certain cases, the parties can, by agreement, restrict the trial court's power to modify alimony or support even

when a substantial change in circumstances or a substantial deviation from the child support guidelines has occurred. . . . *Indeed, with respect to alimony, we have held that unambiguous provisions precluding modification of alimony are enforceable pursuant to the language of § 46b-86 (a).*" (Citations omitted; emphasis added; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 547–48, 46 A.3d 112 (2012).

The parties' agreement clearly prohibits a modification of alimony on the basis of the defendant's cohabitation or an increase in her income, unless that increase is more than $100,000. The plaintiff moved to modify his child support obligation on the basis of a change in custody of the children, which, clearly, is permissible under the agreement. A factor not to be considered in modifying the unallocated award, however, was the cohabitation of the defendant. To permit the court to use this factor to lower the amount of alimony to which the defendant is entitled by virtue of the parties' agreement would eviscerate the clear language and intent of the agreement.

Here, the unallocated order clearly incorporates both alimony and child support without specifying amounts for each component. Each component serves a different function. See *Loughlin* v. *Loughlin*, 280 Conn. 632, 655–56, 910 A.2d 963 (2006) (child support and alimony serve distinct purposes and one must not be used to disguise other). "[C]hild support orders must be based on the statutory criteria enumerated in . . . § 46b-84 of which the most important is the needs of the child . . . . [S]upport award[s] may not be used to disguise alimony awards to the custodial parent. . . . Other courts have similarly noted that guidelines and percentages used without limitation are unrealistic and unfair when both parents have substantial incomes. . . . When a parent has an ability to pay a large amount of support, the determination of a child's needs can be generous, but all any parent should be required to pay, regardless of his or her ability, is a fair share of the amount actually necessary to maintain the child in a reasonable standard of living. Court-ordered support that is more than reasonably needed for the child becomes, in fact, [tax free] alimony." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Maturo* v. *Maturo*, 296 Conn. 80, 105–106, 995 A.2d 1 (2010).

Our Supreme Court instructed in *Tomlinson*: "Because the child support portion of an otherwise nonmodifiable award can be modified upon a change in custody . . . but the alimony portion cannot, a trial court must determine what part of the original decree constituted modifiable child support and what part constituted nonmodifiable alimony." *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 558. In the present case, although the parties' agreement permitted the plaintiff to seek a

modification of the unallocated award on the basis of a substantial change in circumstances, the change in the custody being the ground alleged in the motion, the only aspect of the award that he sought to modify on the face of his motion was his child support order.

Moreover, even if we were to read the motion broadly to include the alimony order, it is not clear how the change in the children's residence had an effect on the alimony portion of the agreement. "The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties." (Internal quotation marks omitted.) *Hane* v. *Hane*, 158 Conn. App. 167, 173, A.3d (2015).

Furthermore, there is no indication that the court determined or considered the amount of child support from the original orders and the amount allocated to alimony. Before the court could consider a change to the child support portion of the unallocated support order, it, necessarily, had to determine the original amount of child support and the appropriate amount of current child support under the child support guidelines.

Indeed, "[g]iven that [t]he original decree [of dissolution] . . . is an adjudication by the trial court as to what is right and proper at the time it is entered . . . the trial court must first determine what portion of the unallocated order represented the child support component at the time of the dissolution. Additionally, because questions involving modification of alimony and support depend . . . on conditions as they exist at the time of the hearing . . . it is necessary to evaluate the parties' present circumstances in light of the passage of time since the trial court's original calculation.

"In entering an initial support order during the dissolution proceeding, a trial court must calculate the minimum amount of child support required by the guidelines, and it may deviate from such amount only upon [a] specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under criteria established by the [Commission for Child Support Guidelines] under [General Statutes §] 46b-215a. . . . Any such finding shall include the amount required under the guidelines and the court's justification for the deviation, which must be based on the guidelines' [c]riteria for deviation . . . . The deviation criteria include, inter alia, the coordination of total family support, shared physical custody, extraordinary disparity in parental income and the best interests of the child. . . . The coordination of total family support criterion allows the trial court to deviate from the presumptive support amount calculated pursuant to the guidelines upon consideration of the (A) division of assets and

liabilities, (B) provision of alimony, and (C) tax planning considerations . . . [w]hen such considerations will not result in a lesser economic benefit to the child . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson,* supra, 305 Conn. 558–59.

"In modifying the support order in a subsequent proceeding, a trial court may consider the same factors applied in the initial determination to assess any changes in the parties' circumstances since the last court order. . . . [General Statutes §] 46b-215b (c) *mandates that the guidelines shall be considered* in addition to and not in lieu of the criteria for such awards established in [General Statutes §§] 46b-84 [and] 46b-86 and other [relevant] statutes . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 559.

In this case, the parties had an agreement for the unallocated support of the children and the defendant. The alimony portion of the agreement was nonmodifiable on the ground of cohabitation. After the parties agreed that the children would reside primarily with the plaintiff, rather than spend 50 percent of their time with him, but specifically stipulated that both parties retained "joint legal and physical custody," the plaintiff sought to modify his child support obligation. The court failed to consider what portion of the original award went to child support and what portion went to alimony. There also is no indication that it considered the child support guidelines when fashioning the new award. Additionally, in contravention of the parties' clear agreement, the court focused on the fact of the defendant's cohabitation in modifying the alimony portion of the unallocated award. Accordingly, the judgment of the court must be reversed and the matter remanded for a new hearing.

## II

The defendant also claims that the court abused its discretion when it denied her motion for contempt. We disagree with the court's analysis of this issue and, therefore, reverse the judgment and remand the matter for reconsideration.

We begin with general principles regarding civil contempt and the applicable standards of review. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . A contempt judgment cannot stand when, inter alia, the order a contemnor is held to have violated is vague and indefinite, or when the contemnor, through no fault of his own, was unable to obey the court's order. . . . Consistent with the foregoing, when we review such a judgment, we first consider the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambigu-

ous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . .

"Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted; internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 379–80, 107 A.3d 920 (2015).

We begin by considering whether the parties' agreement is sufficiently clear and unambiguous. Neither party argues that the agreement was not clear or that it contained any ambiguity, nor did the court find the agreement to be ambiguous. Following our own review of the agreement, we also conclude that it is clear and unambiguous.

"Civil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts . . . . Whether an order is sufficiently clear and unambiguous is a necessary prerequisite for a finding of contempt because [t]he contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind. . . . This is a long-standing tenet of the law of contempt. . . . It is also logically sound that a person must not be found in contempt of a court order when ambiguity either renders compliance with the order impossible, because it is not clear enough to put a reasonable person on notice of what is required for compliance, or makes the order susceptible to a court's arbitrary interpretation of whether a party is in compliance with the order." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 695, 935 A.2d 1021 (2007).

In the present case, the court specifically found: "[a]lthough the defendant provided the court with evidence that there was a clear and unambiguous order in effect obligating the plaintiff to pay the defendant unallocated alimony and child support, and that the plaintiff failed to comply with said order by modifying the order on October 1, 2012, without permission of the court, the court finds the plaintiff had a reasonable excuse that is supported by the ambit of the statutory framework set forth in § 46b-224." The court determined that because § 46b-224 suspends *child support payment*s "by operation of law," the plaintiff did not engage in self-help or act wilfully when he failed to comply with the existing orders of the court. We cannot agree with the court's reasoning.

Section 46b-224 provides, in relevant part, that when "the Superior Court, in a family relations matter . . . orders a change or transfer of . . . custody of a child who is the subject of a preexisting support order, and the court makes no finding with respect to such support order, such . . . custody order shall operate to . . . [s]uspend the support order if . . . custody is transferred to the obligor under the support order . . . ."

The statute applies when there is a change in custody. Here, the parties' supplemental parenting agreement specifically stated that both parties continued to share "joint legal and physical custody of the minor children," and that "[t]he children shall primarily reside with the [plaintiff] . . . ." Because the plaintiff acquired primary physical custody of the children, we agree that the statute was applicable. Section 46b-224, however, only speaks to child support, and it certainly would not give a party the right to suspend his alimony obligation. Under the circumstances of this case, it is clear from the court's memorandum of decision that the court reduced the defendant's alimony award and the child support award in the combined total of the plaintiff's unilateral reduction. This demonstrates that the plaintiff's unilateral reduction, in the opinion of the trial court, was not solely in the amount of his court ordered child support. In other words, relying on § 46b-224, the court found it was not contemptuous for the plaintiff to have suspended some portion of the defendant's alimony award. We conclude that this was an improper reliance on § 46b-224.

We further conclude that the statute, alone, does not give a party the right or an excuse to suspend an unallocated support obligation.[6] Because we disagree with the court's analysis of this issue, we remand the matter for reconsideration of the defendant's motion for contempt.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[1] The plaintiff contends that the "parties stipulated that there was a substantial change in the financial circumstances of the parties," but he points only to the court's memorandum of decision. Although the court did state that the parties stipulated that there had been a substantial change in circumstances, it did not state that such a change was financial. Our review of the record reveals that the defendant conceded that the children's change of residence was a substantial change in circumstances. We are unable to find any stipulation by the defendant that there was a substantial change in the financial circumstances of the parties.

[2] General Statutes § 46b-224 provides in relevant part: "Whenever . . . the Superior Court, in a family relations matter, as defined in section 46b-1, orders a change or transfer of . . . custody of a child who is the subject of a preexisting support order, and the court makes no finding with respect to such support order, such . . . custody order shall operate to: (1) Suspend the support order if . . . custody is transferred to the obligor under the support order; or (2) modify the payee of the support order to be the person or entity awarded . . . custody of the child by the court, if such person or entity is other than the obligor under the support order."

[3] During the dissolution proceedings, the plaintiff acknowledged that the

agreement intentionally made the dollar amount of the spousal support payments higher because the term was so limited:

"[The Plaintiff's Attorney]: All right. Now, I had several discussions with you concerning the terms of this agreement, and I'm not going to go into it in any great detail, but I indicate that if this case was tried, it was highly unlikely that a court would order you to pay the amount of alimony and support that is called for in this agreement. I told you that?

"[The Plaintiff]: Yes, you have.

"[The Plaintiff's Attorney]: I also told you it was highly unlikely that a court would order the term of alimony as short as it is in this agreement, correct?

"[The Plaintiff]: Yes.

"[The Plaintiff's Attorney]: So, basically, you're paying more money for a less period of time than what I think would happen if you tried the case, which would be less money but for a longer period of time?

"[The Plaintiff]: Yes."

[4] The plaintiff's original unallocated support payment was approximately $54,000 per month, which he unilaterally reduced to $20,000 per month, a reduction of approximately $34,000 per month. The plaintiff testified, however, that after the children came to reside with him essentially full-time rather than half-time, his monthly expenses, excluding payments to the defendant, went from $26,435.40 in 2011, to $42,574 in 2013. He stated that the approximate $16,000 increase in his expenses was due to the care of the children. He also testified that because of his tax bracket, he needed approximately $32,000 in income to make up that $16,000 increase. The court specifically found that many of the plaintiff's claimed expenses lacked credibility. Nevertheless, the court reduced the plaintiff's payments to the defendant by approximately $34,000.

[5] The court specifically held that *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 46 A.3d 112 (2012), was not applicable. We do not agree.

[6] We need not determine whether a party would have the right to suspend the child support portion of an unallocated award if the original dissolution court had indicated the child support portion of such award, although specifically ordering that the total award was unallocated.

-----